## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JAMES FREEMAN,** | : | |
| | : | |
| **Plaintiff** | : | |
| | : | |
| v. | : | **CIVIL NO. 3:10-CV-1545** |
| | : | |
| **J. A. MILLER, et al.,** | : | **(Judge Munley)** |
| | : | |
| **Defendants** | : | |

:::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

### MEMORANDUM

**Background**

　　James Freeman ("Plaintiff"), an inmate presently confined at the State Correctional Institution, Cresson, Pennsylvania ("SCI-Cresson"), filed this <u>pro</u> se civil rights action pursuant to 42 U.S.C. § 1983.  By Memorandum and Order dated October 4, 2010, Freeman's claims against Defendants Pennsylvania Board of Probation and Parole (Parole Board), Judge Robert Sacavage, District Attorney Rosini, Assistant District Attorney Michael Toomey, Trooper Kevin Kearney, and Magistrate Judge John Cyembic were <u>sua</u> <u>sponte</u> dismissed.  <u>See</u> Doc. 26.

　　On August 26, 2011, a motion to dismiss filed by Defendants  Doctor Michael Weisner, Physician's Assistants (PA) Ms. Shylensburg and Davis was granted.  <u>See</u> Doc. 50.  As a result of those rulings, Remaining Defendants include the following twenty-five (25) employees at Plaintiff's former place of incarceration, the State Correctional Institution, Coal Township, Pennsylvania (SCI-Coal Twp):  Correctional Officers J.A. Miller, Kauffman, Hoot, R. Henz, J. Seedor, Lynn, McDonald, and Fetterolf; Nurses Trautman and Shepperson; Sergeants Erdly and

1

Burnhart; Lieutenants Gooler, Shipe, Faust, Burns, Mowrey, and Eveland; Captains McCoy and

W. Miller; Grievance Coordinator K. K. Dascandi; Hearing Examiners Kerns-Barr;  Ms. Hamm;

Food Manager Shaletsky; Teacher Ms. Lascavage; and Mail Room Supervisor Jellen

("Corrections Defendants').[1]  The other Remaining Defendants are multiple John and Jane Doe

employees at SCI-Cresson including an unidentified Hearing Examiner.

Plaintiff states that around August 25, 2009, he was placed in the SCI-Coal Twp.

Restricted Housing Unit (RHU) on administrative custody status.  After Freeman and his RHU

cellmate, Inmate Williams, got into two fights with one another they allegedly asked Defendants

Knorr, Miller, Kaufman, Erdly, Burnhart, Burns, McDonald, Gooler, and Mowry to be separated

from one another.  In addition, Inmate Williams also purportedly indicated to various

correctional staff members that he was going to stab Plaintiff.  However, those requests for

separation were denied and Defendant Miller allegedly encouraged Williams to stab the Plaintiff

in retaliation for his initiation of lawsuits against prison officials.  See Doc. 1, p. 2 (2).  On

September 6, 2009, Sergeant Gooler purportedly warned Williams that he would be issued a

misconduct if he assaulted Plaintiff but again failed to have the cellmates separated. According

to the Complaint, Correctional Officer Fetterolf similarly failed to take preventive measures

when informed by Plaintiff that his cellmate was threatening to stab him.

After Freeman went to sleep that evening, he was attacked and stabbed by Inmate

Williams.  See id. at p. 3 ¶ 5.  During this incident, it is asserted that Defendants Hoot, Henz,

and McCoy refused to open the cell door and restrain Williams but rather just stood outside the

---

[1]  The Court relies upon the Corrections Defendants' spellings of Erdly and Burnhart's
names.  See Doc. 36, p. 7.

2

cell and yelled at the inmate to cease his assault.

The Complaint next contends that Defendant Miller verbally threatened Plaintiff and attempted to place him in harm's way by telling other prisoners that he was a rat and a rapist. See id. at ¶ 9.  Thereafter, around  November 22, 2009, Plaintiff claims that Miller subjected him to sexual harassment during a strip search.  Freeman further maintains that during this same time period Freeman was receiving meals which had been contaminated.

It is next alleged that between February 12-18, 2009, Plaintiff was placed in a hard cell within the  RHU which had no desk, seat, clothes, mattress, soap, recreation privileges, legal mail, or toilet paper.  See id. at ¶ 14.  Due to the cold temperature in the cell, the Complaint states that Freeman caught a cold, suffered from a massive headache, and his feet went "numb" and started burning.[2]  Id.  In addition, Lieutenant Eveland told Plaintiff that he would have to endure those conditions for a one (1) week period and Defendants Eveland, Fetterolf Burnhart, Seedor, Marx, Trautman, Shepperson, Faust, Captain Miller, Officer Miller, McCoy and Erdly denied his requests for relief including a blanket.  Despite those physical problems, Plaintiff was purportedly not permitted to see a doctor until February 14, 2009.

On February 16, 2010, Freeman states that he was strip searched by Officer Lynn and that during the procedure Lynn grabbed his penis and testicles and made improper remarks.  Complaints made by Freeman regarding this incident to Lieutenants Faust, and Shipe, Sergeant Adams, Ms. Tomcavage, Deputy Elliot and Captain Baumbach were fruitless.

On March 18, 2010, correctional staff including Chell, Loy, Check, Captain Miller and

---

[2]  Plaintiff adds that because two his toes on his right foot were previously amputated he has irregular blood circulation.

Seedor allegedly encouraged prisoners in Plaintiff's housing unit to flood their cells which allowed the overflow, including sewage, to accumulate in Plaintiff's cell.  It is next claimed that Freeman's incoming legal mail was improperly opened over 20 times with the approval of Defendant Dascandi.

The Complaint also maintains that Grievance Coordinator Dascandi and other officials improperly rejected institutional grievances filed by Freeman and also restricted his ability to file additional grievances.  Plaintiff's final SCI-Coal Twp. related claim is that upon being transferred from the prison, his boxes of personal legal materials and  pictures were confiscated and not forwarded to his new prison for over a month.

While housed at SCI-Cresson on August 25, 2010, Plaintiff contends that  Ms. Judy Lascavage issued him a meritless retaliatory misconduct charge alleging that he had committed indecent exposure in her class room.  In a related claim, Freeman states that during the resulting disciplinary proceeding, Hearing Officer Kerns-Barr violated due process by finding him guilty of the charge despite the fact that surveillance camera footage established that he had not committed the offense.  Freeman seeks compensatory damages as well as injunctive and declaratory relief.  Corrections Defendants have responded to the Complaint by filing a motion to partially dismiss the Complaint.[3]  See Doc. 32.  The motion is ripe for consideration.

**Discussion**

**Motion to Dismiss**

Corrections Defendants seek dismissal of the Complaint on the grounds that: (1) Plaintiff

---

[3]  The motion acknowledges that claims that multiple Defendants failed to protect Plaintiff from being stabbed by his cellmate should proceed.

fails to successfully allege a retaliation or conspiracy claim arising out of the stabbing incident; (2) a viable international law claim has not been asserted;  (3) the Complaint does not raise a claim against defendant J.A. Miller; (4) there is no assertion that any Defendant was involved in the alleged incidents of food tampering; (5) Plaintiff's conditions of confinement claims stemming from his hard cell placement are subject to dismissal; (6) the pat down search conducted by Officer Lynn was within acceptable constitutional parameters; (7) there is no allegation that any Defendant was personally involved in the flooding of Freeman's RHU cell; (8) there is no assertion that any Defendant was personally involved in Plaintiff's assertion of mail tampering and the mail at issue was not privileged; (9) since there is no right to a grievance procedure, Freeman's claims regarding the handling of his grievances are meritless**;** (10) Plaintiff's due process claims relating to his institutional misconduct proceedings do not set forth an actionable claim; (11) there is no assertion that any Corrections Defendant committed any constitutional misconduct with respect to the alleged fractured hand which Freeman suffered on April 12, 2010; (12) the untimely delivery of Plaintiff's personal legal materials did not violate his right of access to the courts; (13) Freeman's parole related claims fail because there is no assertion that Defendant Hamm engaged in any constitutional misconduct; (14) any state law tort claims are precluded from consideration; and (15) the damage claims against Defendants in their official capacities are barred by the Eleventh Amendment.  <u>See</u> Doc. 36, p. 2-3.

**<u>Standard of Review</u>**

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of complaints that fail to state a claim upon which relief can be granted.  When ruling on a motion to dismiss under

Rule 12(b)(6), the court must "accept as true all factual allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff."  Kanter v. Barella, 489 F.3d 170, 177 (3d Cir. 2007)(quoting Evancho v. Fisher, 423 F.3d 347, 350 (3d Cir. 2005)).  A plaintiff must present facts that, if true, demonstrate a plausible right to relief.  See Fed. R. Civ. P. 8(a)(stating that the complaint should include "a short and plain statement of the claim showing that the pleader is entitled to relief"); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  This requirement "calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of" the necessary elements of the plaintiff's cause of action.  Id. at 556.  A complaint must  contain "more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  Ashcroft v. Iqbal, ___ U.S. ____ , 129 S.Ct 1937, 1949 (2009).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice."  Iqbal, 129 S.Ct at 1949.  Legal conclusions must be supported by factual allegations and the complaint must state a plausible claim for relief.  See id. at 1950.

"Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Twombly, at 555.  The reviewing court must determine whether the complaint "contain[s] either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory."  Id. at 562; see also Phillips v. County of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008)(in order to survive a motion to dismiss, a plaintiff must allege in his complaint "enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element[s]" of a particular cause of action).  Additionally, pro se pleadings are to

be construed liberally, Haines v. Kerner, 404 U.S. 519, 520 (1972).

**1.**      **Retaliation/Conspiracy**

The initial argument for dismissal asserts that with respect to the stabbing incident, a

viable claim of retaliation has not been set forth because "Plaintiff does not allege that any of the

Defendants except for J.A. Miller were aware of any constitutionally protected conduct in which

Plaintiff engaged, and therefore he cannot show the requisite causal relationship as to all the

other Defendants."  Doc. 36, p. 15.

To establish a Section 1983 retaliation claim, a plaintiff bears the burden of satisfying

three (3) elements.  First, a plaintiff must prove that he was engaged in a constitutionally

protected activity.  Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001). Second, a prisoner must

demonstrate that he "suffered some 'adverse action' at the hands of prison officials."

(Id.)(quoting Allah v. Seiverling, 229 F.3d 220, 225 (3d Cir.  2000)).  This requirement is

satisfied by showing adverse action "sufficient 'to deter a person of ordinary firmness' from

exercising his First Amendment rights."  (Id.)(quoting Suppon v. Dadonna, 203 F.3d 228, 235

(3d Cir. 2000)).  Third, a prisoner must prove that "his constitutionally protected conduct was 'a

substantial or motivating factor' in the decision to discipline him."  Rauser, 241 F.3d at 333-

34(quoting Mount Health Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977)).  The mere fact that

an adverse action occurs after a complaint or grievance is filed is relevant, but not dispositive, for

the purpose of establishing a causal link between the two events.[4]  See Lape v. Pennsylvania, 157

Fed. App'x. 491, 498 (3d Cir. 2005).

Once Plaintiff has made a prima facie case, the burden shifts to the Defendants to prove

---

[4] Only where the facts of a particular case are "unusually suggestive" of a retaliatory motive
will temporal proximity, standing alone, support an inference of causation.  Krouse v. American
Sterlizer Co., 126 F.3d 494, 503 (3d Cir. 1997).

by a preponderance of the evidence that they "would have made the same decision absent the protected conduct for reasons reasonably related to penological interest." Carter v. McGrady, 292 F.3d 152, 158 (3d. Cir. 2002)(internal quotation and citation omitted).  When analyzing a retaliation claim, it must be recognized that the task of prison administrators and staff is difficult, and the decisions of prison officials require deference, particularly where prison security is concerned.  Rauser, 241 F.3d at 334.

Filing of a lawsuit is protected activity under the First Amendment right of prisoners to petition the court.  Anderson v. Davila, 125 F.3d 148, 161 (3d Cir. 1997); Milhouse v. Carlson, 652 F.2d 371, 373-74 (3d Cir. 1981).  The submission of grievances is also constitutionally protected conduct.  See Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir. 2003).  Based upon a review of the Complaint, there are no facts presented which would show that the Defendants involved in the stabbing incident with the exception of Officer J.A. Miller had knowledge that Plaintiff had previously initiated institutional grievances.  With respect to those officials (sans Miller), this Court concurs that the Rauser, requirement that Plaintiff show that his constitutionally protected activity was a motivating factor for the adverse action.[5]

The Complaint vaguely indicates that Plaintiff was the victim of a conspiracy.  See Doc. 1, p. 2.  The second portion of Corrections Defendants' argument asserts that any claim that the failure to intercede on Plaintiff's behalf with respect to his request for protection from his cell mate was the result of a conspiracy is meritless.  See Doc. 36, p. 15.

In order to set forth a cognizable conspiracy claim, a plaintiff cannot rely on broad or conclusory allegations.  D.R. by L.R. v. Middle Bucks Area Vocational Technical Sch., 972 F.2d

---

[5]  With respect to the adverse action prong of Rauser, Freeman continued to file lawsuits and institutional grievances throughout his SCI-Coal Twp. confinement.  Thus, there is a question as to whether the purported adverse action was sufficient to deter a person of ordinary firmness from continuing to exercise his First Amendment rights as required under Rauser and Allah .

1364, 1377 (3d Cir. 1992), cert. denied, 506 U.S. 1079 (1993); Rose v. Bartle, 871 F.2d 331, 366 (3d Cir. 1989); Durre v. Dempsey, 869 F.2d 543, 545 (10th Cir. 1989).  The Third Circuit Court of Appeals has further noted that "[a] conspiracy claim must . . . contain supportive factual allegations."  Rose, 871 F.2d at 366.  Moreover, "[t]o plead conspiracy adequately, a plaintiff must set forth allegations that address the period of the conspiracy, the object of the conspiracy, and the certain actions of the alleged conspirators taken to achieve that purpose."  Shearin v. E.F. Hutton Group, Inc., 885 F.2d 1162, 1166 (3d Cir. 1989).

The essence of a conspiracy is an agreement or concerted action between individuals. See D.R. by L.R., 972 F.2d at 1377; Durre, 869 F.2d at 545.  Consequently, a plaintiff must allege with particularity and present material facts which show that the purported conspirators reached some understanding or agreement or plotted, planned and conspired together to deprive plaintiff of a protected federal right.  Id.; Rose, 871 F.2d at 366; Young, 926 F.2d at 1405 n.16; Chicarelli v. Plymouth Garden Apartments, 551 F. Supp. 532, 539 (E.D. Pa. 1982).  Where a civil rights conspiracy is alleged, there must be some specific facts in the complaint which tend to show a meeting of the minds and some type of concerted activity.  Deck v. Leftridge, 771 F.2d 1168, 1170 (8th Cir. 1985).  A plaintiff cannot rely on subjective suspicions and unsupported speculation.  Young v. Kann, 926 F.2d 1396, 1405 n.16 (3d Cir. 1991).

Viewing the Complaint in the light most favorable to Plaintiff, it is clear that he has failed to state a viable conspiracy claim against the Corrections Defendants.  As correctly noted by the Corrections Defendants, "Plaintiff does not allege that any of the defendants acted together with a common purpose, nor does he allege any overt act."  Doc. 36, p. 15.  Rather, it appears to this Court that Plaintiff is simply contending that any objectionable action taken by any prison official establishes their involvement in the purported conspiracy.  There are simply no averments of fact in the Complaint that reasonably suggest the presence of an agreement or

concerted activity between the  Defendants to violate Freeman's civil rights.  Dismissal will be

granted in favor of Corrections Defendants with respect to the claim of conspiracy.

**2.**      **International Law**

Plaintiff generally contends that the conduct attributed to the Corrections Defendants

violated International Law.  <u>See</u> Doc. 1, p. 2.  The Complaint references the Universal

Declaration of Human Rights of 1948 (Universal Declaration).  Corrections Defendants argue

that "there is no cause of action for a generic violation of international law" which is enforceable

in federal court.  <u>See</u> Doc. 36, p. 16.

The United States Supreme Court in <u>Sosa v. Alvarz-Machain</u>, 542 U.S. 692, &34 (2004),

Clearly stated that although the United States is a signatory to the Universal declaration, "it did

not itself create obligations enforceable in the federal courts."  Accordingly, this Court concurs

with the Corrections Defendants that Plaintiff cannot proceed with his claim under the Universal

Declaration.

**3.**      **Retaliation by Miller**

Plaintiff alleges that he was subjected to retaliation by Officer Miller for filing an

institutional grievance.  <u>See</u> Doc. 1, ¶ 8.  First, Plaintiff contends that Miller retaliated against him

by not responding to his request to be separated from his cell mate, Inmate Williams.  Second, it

is asserted that over a subsequent period of approximately two (2) weeks, Officer Miller verbally

threatened him and told other prisoners that Freeman was a rat and rapist and encouraged them to

make loud noises in order to prevent Plaintiff from sleeping.

Corrections Defendants contend that a viable retaliation claim is not asserted because

Plaintiff has not shown "a casual connection between constitutionally protected conduct and an

adverse action."  Doc. 36, p. 17.

Based upon Plaintiff's assertion that Miller told Williams to stab Plaintiff because

Freeman was a rat and had filed lawsuits against prison staff (Doc. 1, ¶ 2), Plaintiff has adequately shown that he was engaged in a constitutionally protected activity (the filing of grievances).  He has also alleged that he suffered adverse action of a sufficient degree, namely that he was stabbed by Williams because Miller failed to protect his safety.  Accordingly, based upon an application of the <u>Rauser</u> principles, this Court is satisfied that the retaliation claims against Miller are sufficient to withstand scrutiny under Rule 12(b)(6).

**<u>4</u>      <u>Food Tampering</u>**

Plaintiff claims that the meal trays which were delivered to his RHU cell during a three (3)  month period were missing food or were  "all messed up."  Doc. 1, ¶ 11.  For instance, some meals were purportedly contaminated with cigarette butts.  Freeman adds that Defendant Shaletsky, the prison's Food Service Manager allegedly admitted that "it was the kitchen's fault." <u>Id</u>.  Corrections Defendants assert that Plaintiff's claim of food tampering lacks merit because there is no allegation that any Defendant had personal involvement in said conduct.  <u>See</u> Doc. 36, p. 19.

Civil rights claims brought cannot be premised on a theory of <u>respondeat superior</u>.  <u>Rode v. Dellarciprete</u>, 845 F.2d 1195, 1207 (3d Cir. 1988).  Rather, each named defendant must be shown, via the complaint's allegations, to have been personally involved in the events or occurrences which underlie a claim.  <u>See</u> <u>Rizzo v. Goode</u>, 423 U.S. 362 (1976); <u>Hampton v. Holmesburg Prison Officials</u>, 546 F.2d 1077 (3d Cir. 1976).  As explained in <u>Rode</u>:

> A defendant in a civil rights action must have personal involvement in the alleged wrongs. . . .  [P]ersonal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence. Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity.

<u>Rode</u>, 845 F.2d at 1207.

Based upon the standards established in <u>Rode</u>, Plaintiff cannot establish liability against

Food Service Manager Shaletsky solely on the basis of his supervisory capacity.  Moreover, the sole contention that Shaletsky stated that it was the kitchen's fault is insufficient for establishing personal involvement by Shaletsky in the alleged unconstitutional conduct.  Accordingly, dismissal will be granted in favor of Defendant Shaletsky.  Since there are no factual contentions set in the Complaint that implicate any other Defendant in the alleged food tampering, this claim cannot proceed.

**5.**    **Hard Cell**

Between February 12, 2010 and February 18, 2010, Plaintiff alleges that he was confined to a hard cell, one "with no desk, seat, mattress, no cloths [sic], no tolite [sic] paper, only a smock, then some boxers, and was refused a blue berry blankett [sic]."  Doc. 1, ¶ 14.  Due to the cold temperature in his cell, Freeman contends that the was deprived of sleep and came down with a cold, a headache and foot numbness.  He was also denied legal mail, showering privileges, recreation, non-legal mail, soap, pen, and paper while in the hard cell.  See id. at ¶ 15.

Corrections Defendants argue that said claims must fail because there is no assertion that any Defendants were responsible for his placement or had the authority to remove him from the hard cell.  See Doc. 36, p. 20.

The Eighth Amendment's prohibition of cruel and unusual punishment imposes duties on prison officials to provide prisoners with the basic necessities of life, such as food, clothing, shelter, sanitation, medical care and personal safety.  See Farmer v. Brennan, 511 U.S. 825, 832 (1994); Helling v. McKinney, 509 U.S. 25, 31 (1993).  Prison conditions may amount to cruel and unusual punishment if they cause "unquestioned and serious deprivations of basic human needs ... [that] deprive inmates of the minimal civilized measure of life's necessities."  Tillman v. Lebanon County Correctional Facility, 221 F.3d 410 (3d Cir. 2000).

Courts have stressed that the duration of the complainant's exposure to the alleged

unconstitutional conditions and the "totality of the circumstances" are critical to a finding of

cruel and inhumane treatment.  Moreover, the focus must be on the deprivation of a particular

basic necessity.  As explained in Wilson v. Seiter, 501 U.S. 294, 304-05 (1991):

> Some conditions of confinement may establish an Eighth
> Amendment violation 'in combination' when each would not do so
> alone, but only when they have a mutually enforcing effect that
> produces the deprivation of a single, identifiable human need such
> as food, warmth, or exercise – for example, a low cell temperature
> at night combined with a failure to issue blankets. To say that some
> prison conditions may interact in this fashion is a far cry from
> saying that all prison conditions are a seamless web for Eighth
> Amendment purposes. Nothing so amorphous as 'overall
> conditions' can rise to the level of cruel and usual punishment
> when no specific deprivation of a single human need exists.

Based upon Plaintiff's allegations that he sought relief from several Defendants regarding

the conditions in his hard cell and accepting as we must the veracity of those assertions, this

Court is satisfied that the totality of the alleged conditions of his hard cell confinement could rise

to the level of a constitutional violation.  This request for dismissal will be denied.

**6.     Pat Down Search**

According to the Complaint, on February 16, 2010, Plaintiff underwent a strip search by

Officer Lynn.  While frisking the Plaintiff, Lynn allegedly "came up my thigh and grabbed and

squeezed my nut sacks."  Doc. 1, ¶ 17. The officer also purportedly grabbed Plaintiff's penis and

asked the prisoner if he liked how that felt.  See id.  Freeman purportedly complained about the

incident to Lieutenant Shipe, Captain Baumbach, Lieutenant Faust, Tomcavage, Deputy Elliott

and Sergeant Adams but received no relief having been told that searching the genital area was in

accordance with prison policy.  Corrections Defendants maintain that the search was within

acceptable constitutional parameters.

The Fourth Amendment prohibits unreasonable searches and seizures.  Inmates are also

protected from cruel and unusual punishment under the Eighth Amendment.  However, reasonable searches within the prison walls are constitutionally permissible.  See  Carroll v. United States, 267 U.S. 132, 147 (1925); Allegheny County Prison Employees v. County of Allegheny, 124 Fed. Appx. 140, 141-42 (3d Cir. 2005)(random pat-down searches including the abdomen and groin by prison employees is reasonable).  When addressing the legality of searches courts must balance "the need for the particular search against the personal rights that the search entails."  Bell v. Wolfish, 441 U.S. 520, 559 (1979).  It is also well recognized that one of the consequences of entering a correctional facility is a diminished expectation of privacy. It is also well settled that constitutional protection does not extend to every malevolent touch by a prison official.  Hudson v. McMillian, 503 U.S. 1, 9 (1992).

In Hughes v. Smith, 237 Fed. Appx. 756 (3d Cir. 2007), the Court of Appeals for the Third Circuit addressed an inmate's claim of sexual assault.  The court in Hughes concluded that a single pat-down frisk which was not accompanied by any sexual comments during which the correctional officer allegedly touched the prisoner's testicles through his clothing did not rise to the level of a constitutional violation even though the officer had made sexual advances in the past.  See id. at 759, see also, Bradley v. United States, 299 F.3d 197, 201 (3d Cir. 2002) (customs official's pat-down search during which the female plaintiff's breasts were allegedly touched in an inappropriate manner did not violate the Fourth Amendment).

The present case similarly regards a single pat-down search of an inmate which purportedly included an inappropriate touching of the inmate's testicles and penis.  There is no assertion that Lynn subjected Plaintiff to any further purportedly improper searches following the February 16, 2010 incident or that the attributed conduct resulted in any type of physical injury. Plaintiff also does not allege that he sought medical treatment or counseling following the search.  There is also no contention that Lynn made sexual advances towards Freeman either prior to or

after the incident.

Accepting the veracity of Plaintiff's allegations, it is apparent that this purported incident of alleged sexual abuse may be sufficient to set forth an Eighth Amendment claim.  Plaintiff has set forth adequate factual allegations which could support a claim that Officer Lynn's search and accompanying verbal remarks included a sexual aspect of such magnitude as to set forth a viable civil rights claim.  See Ellis v. Elder, No. 7:08-CV-642, 2009 WL 275316 *3 (W.D. Va. Feb. 4, 2009)(inmate must allege facts which could prove that unwanted touching has some sexual aspect to it).  Officer Lynn's request for dismissal will be denied.

## 7   Cell Flooding

According to the Complaint, Plaintiff's RHU cell was flooded on March 18, 2010.  Plaintiff acknowledges that the flooding was caused by the conduct of other prisoners in his housing unit.[6]  He asserts that Officers "Chell," "Loy Check", and Seedor as well as Captain Miller refused to provide him with cleaning supplies for a 12 hour period following the incident.[7]  See Doc. 1, ¶ 20.

Corrections Defendants seek dismissal of this claim on the basis that there is no allegation that any Defendant had personal involvement in causing the flooding.  See Doc. 36, p. 24.  They add that the alleged claim of denial of cleaning supplies is too vague to establish a cause of action.

As previously discussed, to establish an Eighth Amendment claim, Freeman must show that the conditions of his confinement pose "a substantial risk of serious harm" to his health or safety.  Farmer, 511 U.S. at 834.  In addition to showing conditions that pose a risk of serious

---

[6]  The Complaint asserts that because Plaintiff's RHU cell was at the bottom of the sloped housing unit the flood waters accumulated in his cell.

[7]  Chell, Loy, and Check are not named as Defendants.

harm, the inmate must show that the prison official responsible for the conditions of confinement acted with "a sufficiently culpable state of mind." Id. at 298.  A prison official violates the Eighth Amendment when he acts with deliberate indifference to a known objectively serious risk to a prisoner's health or safety.  See Farmer, 511 U.S. at 837.   Critical factors which must be considered are the duration of the complainant's exposure to the alleged unconstitutional conditions and the totality of the circumstances.

It is initially noted that this Court agrees that there is no contention by Freeman that any of the named Defendants caused the flooding of his cell on March 18, 2010.  Plaintiff alleges that after the incident he was denied cleaning supplies for a twelve (12) hour period from 10:00 p.m. until 10:00 a.m.  See Doc. 1, ¶ 20.  Plaintiff asserts that as a result of having to stand in the water which was approximately one inch (1") high, his feet became real itchy.  No other harm is alleged.  Based upon an application of the standards announced in Farmer and Wilson, the overnight 12 hour denial of cleaning supplies to Freeman was not of such magnitude as to set forth a viable claim under the Eighth Amendment.

## 8       **Legal Mail**

Plaintiff states that on "numerous' occasions he received mail from counsel for a defendant in other lawsuit which he initiated.  See Doc. 1, ¶ 21.  Freeman claims that those mailings were opened outside of his presence.  After filing a grievance with Defendants Jellen and Dascandi regarding the issue, Plaintiff was advised that because the mail was not from his own attorney it could be opened.  The Complaint concludes that because the envelopes were clearly marked as being legal mail, they should not have been opened.

Corrections Defendants seek dismissal of this claim for three reasons.  First, they assert that there is no allegation that any of them opened the mail at issue.  See Doc. 36, p. 24.  Second,

they argue that the failure of Defendants Jellen and Dascandi to grant relief with respect to his mail tampering related grievance is not a proper basis for relief.  Third, since the mail at issue did not originate from Plaintiff's own attorney, it was not considered privileged correspondence under DOC regulations and could be properly opened outside of Freeman's presence.

It is initially noted that this Court agrees that there is no allegation that any of the Corrections Defendants had actual involvement in the opening of the legal mail in question.  Of course, since the mail was opened outside of Plaintiff's presence, it is understandable why the responsible prison staff members have not been identified in the Complaint.

Inmates have a constitutional right of meaningful access to the law libraries, legal materials, or legal services.  Bounds v. Smith, 430 U.S. 817, 821-25 (1977).  A prisoner's right to send and receive legal mail is uncontroverted and implicates both First and Sixth Amendment concerns, through the right to petition the government and the right of access to the courts.  "When legal mail is read by prison employees, the risk is of a 'chill,' rendering the prisoner unwilling or unable to raise substantial legal issues critical of the prison or prison employees."  Proudfoot v. Williams, 803 F. Supp. 1048, 1052 (E.D. Pa. 1992).

In Lewis v. Casey, 518 U.S. 343, 351-54 (1996), the Supreme Court clarified that an inmate plaintiff, in order to set forth a viable claim under Bounds, must demonstrate that a non-frivolous legal claim had been frustrated or was being impeded.  A plaintiff must also allege an actual injury to his litigation efforts.  Pursuant to the decision rendered in Lewis, in order for an inmate to state a claim for interference with his receipt of legal documents such as suggested in the present case, he must demonstrate that he has suffered actual injury.  See Oliver v. Fauver, 118 F.3d 175, 177-78 (3d Cir. 1997)(concluding that Lewis effectively requires a showing of actual injury where interference with legal mail is alleged).

The pending Complaint asserts no claim that Freeman has been subjected to any

mishandling of legal documents being sent to him by his attorney.  There is also no claim that any of his outgoing legal mail was inspected.  Rather, Plaintiff asserts only that mail sent to him from counsel for a Defendant in another pending litigation was opened.

Since the incoming mail was not being sent by Plaintiff's attorney there was clearly no violation of the attorney-client privilege.  Freeman has also failed to demonstrate that he suffered any actual injury, such as dismissal of a suit or inability to pursue a legal claim due to the opening of the legal mail at issue.  Moreover, although the legal mail has not been specifically described, copies of any filings which were being served on Freeman would clearly not be privileged communication.  Accordingly, entry of dismissal is warranted under the criteria established in <u>Lewis</u> and <u>Oliver</u>.

Finally, for reasons more fully discussed in the following section of this Memorandum, the failure of Defendants Dascandi and Jellen to take any corrective action in response to Plaintiff's grievance is not a sufficient basis for a § 1983 claim.

**9      Grievance Procedure**

It is next asserted that there is no basis for liability asserted against Grievance Coordinator Dascandi or any other prison official regarding the claims that Plaintiff's institutional grievances were improperly rejected or denied and that he was unjustly placed on grievance restriction.  <u>See</u> Doc. 36, p. 25.

Inmates do not have a constitutional right to a prison grievance system.  <u>See</u>  <u>Jones v. North Carolina Prisoners Labor Union</u>, 433 U.S. 119, 137-138 (1977); <u>Speight v. Sims</u>, No. 08-2038, 2008 WL 2600723 at *1 (3d. Cir. Jun 30, 2008)(citing <u>Massey v. Helman</u>, 259 F.3d 641, 647 (7th Cir. 2001)("[T]he existence of a prison grievance procedure confers no liberty interest on a prisoner.") Consequently, any attempt by Plaintiff to establish liability against Defendant

Dascani or any other correctional official solely based upon the substance or lack of response to his institutional grievance does not support a constitutional claim.  See also Alexander v. Gennarini, 144 Fed. Appx. 924, 925 (3d Cir. 2005)(involvement in post-incident grievance process not a basis for § 1983 liability); Pryor-El v. Kelly, 892 F. Supp. 261, 275 (D. D.C. 1995) (because prison grievance procedure does not confer any substantive constitutional rights upon prison inmates, the prison officials' failure to comply with grievance procedure is not actionable).

Pursuant to the above discussion, entry of dismissal with respect the handling of Freeman's grievances and his placement on grievance restriction by Defendant Dascani and other correctional staff is appropriate.

**10      Misconduct Proceedings**

Corrections Defendants next maintain that with respect to Freeman's claims stemming from the issuance of two misconduct charges and resulting disciplinary hearings,[8] Plaintiff cannot establish that the resulting sanctions which were imposed constitute an "atypical or significant hardship when compared to the normal incidents of prison life."  Doc. 36, p. 28.

The Fourteenth Amendment of the United States Constitution provides in pertinent part: "No State shall . . . deprive any person of life, liberty, or property, without due process of law . . . ."  The Supreme Court has mandated a two-part analysis of a procedural due process claim:  first, "whether the asserted individual interests are encompassed within the . . . protection of 'life, liberty or property[,]'" and second, "if protected interests are implicated, we then must decide what procedures constitute 'due process of law.'"  Ingraham v. Wright, 430 U.S. 651, 672 (1977). If there is no protected liberty or property interest, it is obviously unnecessary to analyze what procedures were followed when an alleged deprivation of an interest occurred.

---

[8] One misconduct charge was levied by Defendant. Lascavage, the second by Knarr. Plaintiff also contends that Hearing Examiner Kerms-Barr was biased.

Liberty interests protected by the Fourteenth Amendment may arise either from the Due

Process Clause itself or from state law.  Meachum v. Fano, 427 U.S. 215, 223-26 (1976).  In

Wolff v. McDonnell, 418 U.S. 539, 563-73 (1974), the Supreme Court held that a prisoner facing

serious institutional sanctions is entitled to some procedural protection before penalties can be

imposed.  Wolff, 418 U.S. at 563-71.  The Supreme Court set forth five requirements of due

process in a prison disciplinary proceeding: (1) the right to appear before an impartial

decision-making body; (2) twenty-four hour advance written notice of the charges; (3) an

opportunity to call witnesses and present documentary evidence, provided the presentation of

such does not threaten institutional safety or correctional goals; (4) assistance from an inmate

representative, if the charged inmate is illiterate or if complex issues are involved; (5) a written

decision by the fact finders as to the evidence relied upon and the rationale behind their

disciplinary action. Id.

An additional procedural requirement was set forth in Superintendent, Massachusetts

Correctional Inst. at Walpole v. Hill, 472 U.S. 445, 453-56 (1985).  In Hill, the Supreme Court

held that there must be some evidence which supports the conclusion of the disciplinary tribunal.

The Third Circuit Court of Appeals, and other courts applied the Wolff principles to prison

disciplinary hearings which did not result in withdrawal of good time credit but instead in

disciplinary or administrative segregation.  E.g., Grillo v. Coughlin, 31 F.3d 53 (2d Cir. 1994);

Griffin v. Spratt, 969 F.2d 16 (3d Cir. 1992); Cook v. Lehman, 863 F. Supp. 207 (E.D. Pa. 1994).

However, the United States Supreme Court's subsequent decision in Sandin v. Conner,

515 U.S. 472 (1995), marked a shift in the focus of liberty interest analysis from one "based on

the language of a particular regulation" to "the nature of the deprivation" experienced by the

prisoner.  Id. at 481.  In Sandin, the Supreme Court reasoned, inter alia, that "[d]iscipline by

prison officials in response to a wide range of misconduct" is expected as part of an inmate's

sentence. Id. at 485. The nature of an inmate's confinement in disciplinary segregation was found similar to that of inmates in administrative segregation and protective custody at his prison. Id. at 486.

Focusing on the nature of the punishment instead of on the words of any regulation, the Supreme Court held that the procedural protections in Wolff were inapplicable because the "discipline in segregated confinement did not present the type of atypical, significant deprivation in which a state might conceivably create a liberty interest." Id. The Sandin Court relied on three factors in making this determination: (1)confinement in disciplinary segregation mirrored conditions of administrative segregation and other forms of discretionary confinement; (2) based on a comparison between inmates inside and outside segregation, the state's action in placing the inmate there did not work a major disruption in the inmate's environment; and (3) the state's action did not inevitably affect the duration of inmate's sentence.

Courts within this circuit, applying Sandin in various actions, have found no merit in procedural due process claims presented regarding institutional disciplinary hearings which result in disciplinary custody placement. See Torres v. Fauver, 292 F.3d 141, 150-51 (3d Cir. 2002)(because prisoners can reasonably anticipate transfer to disciplinary custody, placement in segregation as a disciplinary sanction did not implicate a protected liberty interest); Griffin v. Vaughn, 112 F.3d 703, 706-08 (3d Cir. 1997)(no liberty interest; Smith v. Mensinger, 293 F.3d 641, 645, 654 (3d Cir. 2002)(seven (7) months of disciplinary confinement did not implicate liberty interest); Vorhauer v. Conrad, No. 3:CV-90-2196 (M.D. Pa. Jan. 29, 1997) (Vanaskie, J.) (inmate's confinement in disciplinary custody for ninety days in accordance with Department of Corrections procedures did not give rise to a protected liberty interest); Brown v. Stachelek, No. CIV. A. 95-522, 1995 WL 435316, at *3-4 (E.D. Pa. Jul. 20, 1995) (neither the Due Process Clause nor state law supported plaintiff's procedural due process claims because his punishment

(at most ninety days in "close custody" and a loss of "minimum status") was not outside the scope of his sentence and did not otherwise violate the Constitution).

Considering the rules of law set forth in <u>Sandin</u> and the subsequent line of decisions cited above, this Court finds that the false misconduct charge claims raised against Teacher Lascavage and Knarr as well as the procedural due process claims set forth  regarding Hearing Examiner Kerns-Barr are meritless because Plaintiff does not allege that the terms of disciplinary confinement which were imposed by Hearing Examiner Kerns-Barr were of such magnitude as to implicate a protected liberty interest under <u>Sandin</u>.[9]  Dismissal will be granted in favor of Defendants Lascavage, Knarr, and Kerns-Barr with respect to those contentions.[10]

## 11.   **Broken Hand**

On April 12, 2010, Plaintiff claims that he injured his hand while doing push ups.  He describes his injury as his bone "sticking up, like its broke."  Doc. 1, p. 11, ¶ 35.  PA Shylensburg, a non-Corrections Defendant, examined the injury and advised Freeman to sign up for sick call.  On April 16, 2010, Plaintiff was seen by PA Davis (also a non-Corrections Defendant).  An x-ray of Freeman's injured hand was taken and he was prescribed Ibuprofen for pain.  Plaintiff asserts that his requests for Tylenol, an ACE bandage, and a splint were disregarded.

A plaintiff, in order to state an actionable civil rights claim, must plead two essential elements:  (1) that the conduct complained of was committed by a person acting under color of law, and (2) that said conduct deprived the plaintiff of a right, privilege, or immunity secured by

---

[9]  It is also noted that Hearing Examiner Kerns-Barr dismissed many of the charges filed by Defendant Knarr thus, undermining any claim of bias.

[10]  In the event that Plaintiff can demonstrate that he was sanctioned to penalties which would constitute an atypical and significant hardship under <u>Sandin</u>, he may seek reconsideration of this determination.

the Constitution or laws of the United States.  Groman v. Township of Manalapan, 47 F.3d 628,

638 (3d Cir. 1995); Shaw by Strain v. Strackhouse, 920 F.2d 1135, 1141-42 (3d Cir. 1990).

Based upon a thorough review of the Amended Complaint there is no allegation by

Plaintiff that any of the Corrections Defendants were involved in the alleged deliberate

indifference to his need for medical treatment after fracturing his hand.  Consequently, this claim

will be dismissed with respect to the Corrections Defendants.

## 12      Legal Property

Plaintiff alleges that following his transfer from SCI-Coal Twp. to SCI-Cresson there was

a delay in the forwarding of his personal legal materials to his new place of incarceration.

Corrections Defendants contend that dismissal is warranted to the extent that Freeman is raising

a denial of access to the courts claim since there is no allegation that he suffered any actual

injury.  See Doc. 36, p. 31.

As previously discussed, inmates have a constitutional right of meaningful access to law

libraries, legal materials or legal services.  Bounds, 430 U.S. at 821-25.  The United States

Supreme Court in Lewis, 518 U.S. at 351-54, clarified that an inmate plaintiff, in order to set

forth a viable claim under Bounds, must demonstrate that a non-frivolous legal claim had been

frustrated or was being impeded.  A plaintiff must also allege an actual injury to his litigation

efforts.

Based upon a review of the Complaint, Plaintiff raises no contention that his pursuit of a

non-frivolous legal claim was frustrated or impeded due to any conduct attributed to any of the

Corrections Defendants.  Accordingly, under the standards announced in Lewis, the Complaint to

the extent that it is seeking to assert a denial of access to the courts claim based upon a short term

delay in the forwarding of his personal legal materials is subject to dismissal.

## 13      Parole

Also named as a Defendant is Ms. Hamm who is described as being a Hearing Examiner at SCI-Coal Twp.  <u>See</u> Doc. 1, p. 1.  Corrections Defendants identify Hearing Examiner Hamm as being  employed by the Parole Board.[11]   They assert that Hamm is entitled to dismissal because the Complaint does not assert any claims against said Defendant.  <u>See</u> Doc. 36, p. 32.

Plaintiff alleges that he became eligible for parole consideration in October, 2009.  <u>See</u> Doc. 1, ¶ 36.  However, he alleges that due to his RHU confinement, the Parole Board refused to see him.  He asserts that the refusal violated his rights under the Fourteenth Amendment.  The Complaint further asserts that the Parole Board violated the Ex Post Facto Clause when determining Freeman's parole eligibility.

It is well-settled that "there is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence." <u>Greenholtz v. Inmates of Nebraska Penal & Correctional Complex</u>, 442 U.S. 1, 7 (1979);<u>see also</u> <u>Rauso v. Vaughn</u>, 79 F. Supp.2d 550, 551 (E.D. Pa.  2000) (the federal Constitution does not create an entitlement to parole).  Likewise,  the Pennsylvania parole statute does not create a liberty interest in the right to be paroled.  <u>Rodgers v. Parole Agent SCI-Frackville, Wech</u>, 916 F. Supp. 474, 476-77 (E.D. Pa. 1996); <u>McCrery v. Mark</u>, 823 F. Supp. 288, 294 (E.D. Pa. 1993); <u>Thorpe v. Grillo</u>, 80 Fed. Appx. 215, 2003 WL 22477890 (3d Cir. 2003)(because there is no constitutional right to parole, any substantive due process claim is foreclosed);  <u>Perry v. Vaughn</u>, 2005 WL 736633 at *10 (E.D. Pa. March 31, 2005).

Nonetheless, certain claims concerning Parole Board policies, procedures or customs may be brought in a § 1983 action.  Based upon a careful review of the Complaint, other then being named as a Defendant, there are simply no allegations asserted against Hearing Examiner Hamm.

---

[11]  This Court previously concluded that the Parole Board was entitled to entry of dismissal.

Accordingly, since Plaintiff has not alleged the nature of his claim or indicated what role if any, said Defendant played in his parole review process, Hamm is entitled to dismissal under the pleading requirements of Twombly and Iqubal.

Moreover, it is well settled that inmates may not use civil rights actions to challenge the fact or duration of their confinement or to seek earlier or speedier release.  Preiser v. Rodriguez, 411 U.S. 475 (1975).   Accordingly any challenge by Freeman regarding an adverse determination by the Parole Board which affected the duration of his incarceration is more properly asserted in a habeas corpus petition.

## 14       State Tort Claims

Corrections Defendants next contend that to the extent that Plaintiff is attempting to assert a state law intentional tort claim for infliction of emotion distress, said claim is barred by the doctrine of sovereign immunity.  See Doc. 33, p. 37.  With respect to Plaintiff's pendent state law claims, federal courts have jurisdiction over state claims which are related to the federal claims and result from a common nucleus of operative facts.[12]  See United Mine Workers v. Gibbs, 383 U.S. 715, 725 (1966); see also Aldinger v. Howard, 427 U.S. 1, 9 (1976).

Corrections Defendants claim entitlement to sovereign immunity under Pennsylvania state law with respect to Freeman's pendent state law tort claims.  Specifically, they argue that as employees of the Commonwealth of Pennsylvania, they are entitled to sovereign immunity with respect to Plaintiff's claims of infliction of emotional distress and negligence because the Pennsylvania state legislature has not specifically waived immunity with respect to the types of

---

[12]  A district court may decline to exercise supplemental jurisdiction over a claim when the court has dismissed all claims over which it has original jurisdiction.  See 28 U.S.C. § 1367(c)(3) (1997).

state law claims alleged in the complaint.

42 Pa. C.S.A. § 8522(b) sets forth a list of instances for which the Commonwealth of Pennsylvania has waived sovereign immunity. Pennsylvania's Commonwealth Court has recognized that a negligent failure to protect a prisoner from abuse or assault is not one of the instances enumerated under § 8522(b). See Steinberg v. Department of Public Welfare, 405 A.2d 1135 (Pa. Cmwlth. 1979)(an employee's state law claim that staff negligently failed to protect her from sexual assault by two student prisoners at youth development center was barred by doctrine of sovereign immunity). It has also been held that intentional torts such as assault and battery are also not included within the exceptions enumerated in § 8522(b). LaFrankie v. Miklich, 618 A.2d 1145, 1149 (Pa. Cmwlth. 1992). Since Corrections Defendants are entitled to sovereign immunity with respect to Plaintiff's state law tort claims, those claims are hereby dismissed.

### 15.   Eleventh Amendment

Corrections Defendants' final contention is that the claims for money damages against them in their official capacities must be dismissed because they are entitled to immunity under the Eleventh Amendment. See Doc. 36 at 34.

The Eleventh Amendment bars all suits against a state and its agencies in federal court that seek monetary damages. Walker v. Beard, 244 Fed. Appx. 439, 440 (3d Cir. 2007); see also A.W. v. Jersey City Public Schools, 341 F.3d 234, 238 (3d Cir. 2003). Likewise, suits brought against state officials acting in their official capacities are to be treated as suits against the employing government agency. Will v. Michigan Department of State Police, 491 U.S. 58, 70-71 (1989); Garden State Elec. Inspection Serv. v. Levin, 144 Fed. Appx. 247, 251 (3d Cir. 2005). As such, Freeman's damage claims brought against Defendants in their official capacities

are considered to be against the state itself and are barred by the Eleventh Amendment.[13]    An

appropriate Order will enter.

                                                    **BY THE COURT:**

                                                    **s/James M. Munley**
                                                    **JUDGE JAMES M. MUNLEY**
                                                    **United States District Court**
**DATED: SEPTEMBER 30, 2011**

---

[13]    Freeman's claims for injunctive and declaratory relief against Corrections Defendants in their official capacities, however, are not barred by the Eleventh Amendment.  See Pennsylvania Federation of Sportsmen's Clubs, Inc. v. Hess, 297 F.3d 310, 323 (3d Cir. 2002).

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JAMES FREEMAN,** | : | |
| | : | |
| **Plaintiff** | : | |
| | : | |
| **v.** | : | **CIVIL NO. 3:10-CV-1545** |
| | : | |
| **J. A. MILLER, et al.,** | : | **(Judge Munley)** |
| | : | |
| **Defendants** | : | |

**ORDER**

    **AND NOW**, to wit, this 30th day of September  2011, for the reasons set forth in the foregoing Memorandum, it is hereby **ORDERED** that:

       1.    The Corrections Defendants' motion for partial dismissal (Doc. 32)  is **GRANTED IN PART**.

       2.    Dismissal will be entered in favor of the Commonwealth Defendants with exception of the claims that: (1) the conditions of Plaintiff's hard cell confinement were unconstitutional; (2) Officer Miller retaliated against Plaintiff; (3) Commonwealth Defendants failed to protect Plaintiff's safety with respect to the stabbing incident; and (4) Officer Lynn conducted an unconstitutional pat down search.

                             **BY THE COURT:**

                             **s/James M. Munley**
                             **JUDGE JAMES M. MUNLEY**
                             **United States District Court**