## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JAMES FREEMAN,** | : | |
| | : | |
| **Plaintiff** | : | |
| | : | |
| **v.** | : | **CIVIL NO. 3:10-CV-1545** |
| | : | |
| **J. A. MILLER, et al.,** | : | **(Judge Munley)** |
| | : | |
| **Defendants** | : | |

::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## <u>MEMORANDUM</u>

**<u>Background</u>**

This <u>pro</u> se civil rights action pursuant to 42 U.S.C. § 1983 was initiated by James Freeman ("Plaintiff"), an inmate presently confined at the Mahanoy State Correctional Institution, Frackville, Pennsylvania ("SCI-Mahanoy"). By Memorandum and Order dated October 4, 2010, this Court <u>sua</u> <u>sponte</u> dismissed the claims against Defendants Pennsylvania Board of Probation and Parole (Parole Board), Judge Robert Sacavage, District Attorney Rosini, Assistant District Attorney Michael Toomey, Trooper Kevin Kearney, and Magistrate Judge John Cyembic. <u>See</u> Doc. 26.

Defendants Doctor Michael Weisner, Physician's Assistants (PA) Ms. Shylensburg and Davis' motion to dismiss was granted on August 26, 2011. <u>See</u> Doc. 50. By Memorandum and Order dated September 30, 2011, the Corrections Defendants

1

motion for partial dismissal (Doc. 32) was partially granted.[1]  Specifically, dismissal was

entered with exception of the claims that: (1) the conditions of Plaintiff's six day hard cell

confinement were unconstitutional; (2) SCI-Coal Twp. Correctional Officer  Miller

retaliated against Freeman; (3) Corrections Defendants failed to protect Plaintiff's safety

with respect to a September 6, 2009 stabbing incident; and (4) SCI-Coal Twp.

Correctional Officer Lynn conducted an unconstitutional pat down search.

     According to the Complaint,  between February 12-18, 2009, Plaintiff was placed

in a hard cell within the SCI-Coal Twp. RHU where he had no desk, seat, clothes,

mattress, soap, recreation privileges, legal mail, or toilet paper.  See Doc. 1, ¶ 14.  Due to

the cold temperature in the cell, the Complaint states that Freeman caught a cold, suffered

from a massive headache, and his feet went "numb" and started burning.[2]  Id.  In addition,

Lieutenant Eveland told Plaintiff that he would have to endure those conditions for a one

(1) week period and Defendants Eveland, Fetterolf Burnhart, Seedor, Marx, Trautman,

---

[1]  Corrections Defendants included the following twenty-five (25) employees at
Plaintiff's former place of incarceration, the State Correctional Institution, Coal Township,
Pennsylvania (SCI-Coal Twp):  Correctional Officers J.A. Miller, Kauffman, Hoot, R. Henz,
J. Seedor, Lynn, McDonald, and Fetterolf; Nurses Trautman and Shepperson; Sergeants
Erdly and Burnhart; Lieutenants Gooler, Shipe, Faust, Burns, Mowrey, and Eveland;
Captains McCoy and W. Miller; Grievance Coordinator K. K. Dascandi; Hearing Examiners
Kerns-Barr;  Ms. Hamm; Food Manager Shaletsky; Teacher Ms. Lascavage; and Mail Room
Supervisor Jellen ("Corrections Defendants').  The other Corrections Defendants were
multiple John and Jane Doe employees at SCI-Cresson including an unidentified Hearing
Examiner.

[2]  The Complaint noted that because two toes on Freeman's right foot were previously
amputated he has irregular blood circulation.

Shepperson, Faust, Captain Miller, Officer Miller, McCoy and Erdly denied his requests for relief including a blanket. Despite those physical problems, Plaintiff was purportedly not permitted to see a doctor until February 14, 2009.

Plaintiff's third remaining claim states that around August 25, 2009, he was placed in the SCI-Coal Twp. Restricted Housing Unit (RHU) on administrative custody status. Freeman explains that after he and his RHU cellmate, Inmate Williams, got into two fights with one another they asked Defendants Knorr, Miller, Kaufman, Erdly, Burnhart, Burns, McDonald, Gooler, and Mowry to be separated from one another. In addition, Inmate Williams also purportedly indicated to various correctional staff members that he was going to stab Plaintiff. However, their requests for separation were denied. On September 6, 2009, Sergeant Gooler purportedly warned Williams that he would be issued a misconduct if he assaulted Plaintiff but again failed to have the cellmates separated. Correctional Officer Fetterolf also purportedly failed to take preventive measures when informed by Plaintiff that his cellmate was threatening to stab him. After Freeman went to sleep that same evening, he was allegedly attacked and stabbed by Inmate Williams. See id. at p. 3 ¶ 5. During this incident, it is asserted that Defendants Hoot, Henz, and McCoy acted improperly in that the officers refused to open the cell door and restrain Williams but rather just stood outside the cell and yelled at the inmate to cease his assault.

The fourth remaining claim asserts that on February 16, 2010, Freeman was strip searched by Officer Lynn and that during the procedure Lynn grabbed his penis and

3

testicles while making improper remarks.

Corrections Defendants have now filed a motion seeking entry of summary judgment. See Doc. 86. Therein they argue that Plaintiff failed to exhaust his available administrative remedies and that his Eighth Amendment claims relating to his hard cell confinement and being assaulted are insufficient because the inmate was not threatened with any objective serious danger. See Doc. 95, p. 7. The summary judgment motion has been fully briefed and is ripe for consideration.

**Discussion**

**Standard of Review**

Summary judgment is proper if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); See also Saldana v. Kmart Corp., 260 F.3d 228, 231-32 (3d Cir. 2001). A factual dispute is "material" if it might affect the outcome of the suit under the applicable law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A factual dispute is "genuine" only if there is a sufficient evidentiary basis that would allow a reasonable fact-finder to return a verdict for the non-moving party. Id. at 248. The court must resolve all doubts as to the existence of a genuine issue of material fact in favor of the non-moving party. Saldana, 260 F.3d at 232; see also Reeder v. Sybron Transition Corp., 142 F.R.D. 607, 609 (M.D. Pa. 1992). Unsubstantiated arguments made in briefs are not considered evidence of asserted facts. Versarge v. Township of Clinton, 984 F.2d 1359, 1370 (3d

Cir. 1993).

Once the moving party has shown that there is an absence of evidence to support the claims of the non-moving party, the non-moving party may not simply sit back and rest on the allegations in its complaint.  See Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).  Instead, it must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial."  Id. (internal quotations omitted); see also Saldana, 260 F.3d at 232 (citations omitted).  Summary judgment should be granted where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial." Celotex, 477 U.S. at 322-23.  "'Such affirmative evidence – regardless of whether it is direct or circumstantial – must amount to more than a scintilla, but may amount to less (in the evaluation of the court) than a preponderance.'"  Saldana, 260 F.3d at 232 (quoting Williams v. Borough of West Chester, 891 F.2d 458, 460-61 (3d Cir. 1989)).

**Administrative Exhaustion**

Corrections Defendants argue that Freeman failed to exhaust his available administrative remedies as to his remaining claims with exception of his allegation relating to the cold temperature during his confinement in the hard cell.  See Doc. 95, pp. 11-12.  Section 1997e(a) of title 42 U.S.C. provides:

No action shall be brought with respect to prison conditions

under Section 1979 of the Revised Statutes of the United
States (42 U.S.C. 1983), or any other federal law, by a
prisoner confined in any jail, prison, or other correctional
facility until such administrative remedies as are available are
exhausted.

Section 1997e(a) requires administrative exhaustion "irrespective of the forms of

relief sought and offered through administrative avenues." Porter v. Nussle, 122 S.Ct.

983, 992 (2002); Booth v. Churner, 532 U.S. 731, 741 n. 6 (2001). Claims for monetary

relief are not excused from the exhaustion requirement. Nyhuis v. Reno, 204 F.3d 65, 74

(3d Cir. 2000). Dismissal of an inmate's claim is appropriate when a prisoner has failed

to exhaust his available administrative remedies before bringing a civil rights action.

Ahmed v. Sromovski, 103 F. Supp. 2d 838, 843 (E.D. Pa. 2000). "[E]xhaustion must

occur prior to filing suit, not while the suit is pending." Tribe v. Harvey, 248 F.3d 1152,

2000 WL 167468, *2 (6th Cir. 2000)(citing Freeman v. Francis, 196 F.3d 641, 645 (6th

Cir. 1999)); Oriakhi v. United States, 165 Fed. Appx. 991, 993 (3d Cir. 2006).

The United States Supreme Court in Jones v. Bock, 549 U.S. 199, 219 (2007),

stated that the primary purpose of the exhaustion requirement is to allow "a prison to

address complaints about the program it administers before being subjected to suit,

reducing litigation to the extent complaints are satisfactorily resolved, and improving

litigation that does occur by leading to the preparation of a useful record." Id. The

administrative exhaustion mandate also implies a procedural default component. Spruill

v. Gillis 372 F.3d 218, 222 (3d Cir. 2004).

As explained by the Third Circuit Court of Appeals, a procedural default rule

"prevents an end-run around the exhaustion requirement." Id. at 230. It also ensures "prisoner compliance with the specific requirements of the grievance system" and encourages inmates to pursue their administrative grievances "to the fullest." Id. Similarly, the Supreme Court has observed that proper exhaustion of available administrative remedies is mandatory, meaning that prisoners must comply with the grievance system's procedural rules, including time limitations. Woodford v. Ngo, 548 U.S. 81 (2006).

"There is no futility exception" to the exhaustion requirement." Brown v. Croak, 312 F.3d 109, 112 (3d cir. 2002) (citing Nyhuis, 204 F.3d at 75. The Third Circuit Court of Appeals reiterated its no futility exception by rejecting an inmate's argument that exhaustion should be excused because prisoner grievances were regularly rejected. Hill v. Smith, 186 Fed. Appx. 271, 274 (3d Cir. 2006). The Court of Appeals has also rejected "sensitive' subject matter or 'fear of retaliation' as a basis for excusing a prisoner's failure to exhaust." Pena-Ruiz v. Solorzano, 281 Fed. Appx. 110, 113 (3d Cir. 2008).

An inmate is not required to specifically plead or demonstrate exhaustion in his or her complaint. See, Jones, 549 U.S. at 216; see also Ray v. Kertes, 285 F.3d 287 (3d Cir. 2002)(a prisoner does not have to allege in his complaint that he has exhausted administrative remedies). Rather, pursuant to the standards announced in Williams v. Runyon, 130 F.3d 568, 573 (3d Cir. 1997), it is the burden of a defendant asserting the

defense of non-exhaustion to plead and prove it.[3]

The Pennsylvania Department of Corrections ("DOC") has established a Consolidated Inmate Grievance Review System which has been periodically amended. Section V of DC-ADM 804 (effective December 8, 2010) states that "every individual committed to its custody shall have access to a formal procedure through which to seek the resolution of problems or other issues of concern arising during the course of confinement." See Doc. 29, p. 8. It adds that the formal procedure shall be known as the Inmate Grievance System and provides a forum of review and two (2) avenues of appeal. Section VI ("Procedures") of DC-ADM 804 provides that, after attempted informal resolution of the problem, a written grievance may be submitted to the Facility Grievance Coordinator within fifteen (15) working days after the events upon which the claims are based, but allowances of extensions of time will be granted under certain circumstances.

An appeal from the Grievance Coordinator's Initial Review decision may be made in writing within ten (10) working days to the Facility Manager or Superintendent. A final written appeal may be presented within fifteen (15) working days to the Secretary's Office of Inmate Grievances and Appeals (SOIGA). A prisoner, in seeking review through the DOC grievance system, may include reasonable requests for compensation or other legal relief normally available from a court. However, an improperly submitted grievance will not be reviewed.

The Third Circuit Court of Appeals has recognized that under the DOC's

---

[3] In Mitchell v. Horn, 318 F.3d 523, 529 (3d Cir. 2003), the United States Court of Appeals for the Third Circuit similarly stated that "[f]ailure to exhaust administrative remedies is an affirmative defense for the defendant to plead."

administrative review system a prisoner's grievance should identify specific persons, if practicable. <u>Spruill</u>, 372 F.3d at 234. The Court of Appeals explained that an unexplained failure to identify a responsible prison official in a grievance constitutes a procedural default of the claim. It also noted that the prison's grievance process could excuse such a procedural default by identifying the unidentified person and acknowledging that they were fairly within the compass of the prisoner's grievance. However, in <u>Jones</u>, 549 U.S. at 219, the United States Supreme Court established that "exhaustion is not *per se* inadequate simply because an individual later sued was not named in the grievances."

**CO Lynn**

With respect to the inappropriate pat down search claim asserted against CO Lynn, Defendants assert that during the relevant time period Plaintiff was on grievance restriction due to his having filed five or more frivolous grievance within a thirty (30) day period. Due to his restriction status, Plaintiff was only permitted to file one grievance every fifteen (15) days.

Corrections Defendants concede that Freeman did attempt to initiate a grievance against Officer Lynn regarding the pat down search, however, because Plaintiff had already filed his once every fifteen day grievance, his Lynn related grievance was rejected. This initial rejection was upheld at all levels of the DOC's review process and the merits of Plaintiff's claim that CO Lynn conducted an improper pat down search on February 16, 2010 was never addressed. Corrections Defendants additionally note that because the grievance restriction was lifted as of March 6, 2010, Freeman still had opportunity to timely file a grievance against Lynn. Based upon those circumstances, Corrections

Defendants conclude that the claim against Lynn was procedurally defaulted and therefore subject to dismissal as being administratively unexhausted.

In support of their argument, a declaration under penalty of perjury by DOC SOIGA Administrative Officer Tracy Williams has been submitted. Williams verifies the above rejection of the Lynn related grievance and notes that Plaintiff never appealed a grievance to final review regarding the merits of his claim against Lynn. <u>See</u> Doc. 89-2, ¶ 31.

Plaintiff counters that his claim against CO Lynn was exhausted as he filed a grievance which was administratively appealed to final review. <u>See</u> Doc. 100, p. 4. Plaintiff has provided a copy of what he contends is a July 18, 2010 final administrative merits denial of his grievance against CO Lynn. <u>See</u> Doc. 98, p. 7.

In a reply brief, Corrections Defendants assert that the purported July 18, 2010 denial submitted by Freeman is a forgery "and not a particularly good one." Doc. 103, p. 11. They support their argument with a declaration under penalty of perjury by DOC Chief Grievance Officer Dorina Varner who avers that she did not write the July 18, 2010 response as claimed by Plaintiff and no such response was generated by SOIGA. Doc. 104-1, ¶ 11. Varner adds that the document is not in proper format as it is double spaced where SOIGA responses are single spaced. It also contains numerous typographical errors and incorrectly spells the Plaintiff's name.

Corrections Defendants has also filed a motion requesting that Plaintiff be sanctioned for submitting a forged document. <u>See</u> Doc. 104. In addition to the factors raised above, Corrections Defendants add that Plaintiff or someone acting on his behalf

used a response to another grievance # 288554 filed by the inmate as a template, replaced the grievance #, date, and response with new information.  See Doc. 105, p. 4.

Based upon a careful review and comparison of the purported July 18, 2010 grievance response  by Varner, and the response by Varner to Grievance # 288554, as well as other grievance responses in the record, this Court agrees that the July 18, 2010 response relied upon by Plaintiff is not authentic and will not be taken into consideration.

The brief supporting Corrections Defendants' summary judgment motion correctly notes that the Third Circuit Court of Appeals in Cummings v. Crumb, 347 Fed. Appx. 725, 726 (3d Cir. 2009) recognized that the DOC's grievance restriction policy does not render its grievance process unavailable for purposes of § 1997e.  Specifically, the Court of Appeals held that  being on DOC grievance restriction does not per se prevent compliance with the administrative exhaustion requirement.

Since the undisputed record supports the conclusion that Plaintiff could have initiated a timely grievance against CO Lynn by simply waiting until his grievance restriction expired and failed to do so, his claim is subject to dismissal for non-exhaustion under the standards developed in Cummings.  See Ball v. Struthers, 2012 WL 2946785 * 12 (M.D. Pa. July 19, 2012)(dismissal for non-exhaustion is appropriate where Pennsylvania state prisoner on grievance restriction could have filed proper grievance after restriction period expired yet elected not to do so).

Pursuant to the above discussion the motion for summary judgment and motion for sanctions filed on behalf of CO Lynn will both be granted.  Summary judgment will be entered in favor of CO Lynn on the basis of non-exhaustion of available administrative

remedies. Since the claim against Lynn will not be permitted to proceed, the Court will not impose any other sanctions at this time. However, any additional fraudulent behavior undertaken by Plaintiff with respect to the litigation of this matter will result in dismissal of his entire action.

## CO Miller

Freeman's second remaining claim against the Corrections Defendants alleges that Officer Miller retaliated against him for filing an institutional grievance. <u>See</u> Doc. 1, ¶ 8. This purported retaliation included Miller's disregard of Plaintiff's request to be separated from his cell mate, Inmate Williams. It is also asserted that Miller: encouraged Williams to stab the Plaintiff; verbally threatened the inmate; told other prisoners that Freeman was an informant and a rapist; subjected him to sexual harassment during a strip search and encouraged other prisoners to make loud noises in order to prevent Plaintiff from sleeping.

The summary judgment motion next argues that the only grievance ever filed regarding the retaliation allegations against CO Miller was rejected pursuant to the DOC's single issue rule (DC-ADM 804). <u>See</u> Doc. 95, p. 14. Specifically, DC-ADM 804 requires that a grievance may only contain one issue or one event except where it is necessary to combine issues to support a claim. If a grievance is rejected under the so called single issue rule, the prisoner may file a revised grievance within five (5) working days of the date of the rejection of the improper grievance.

Instead of filing a revised grievance, Freeman elected to appeal the rejection of his multi-issue grievance. However, the rejection of the grievance under the single issue rule was upheld at all levels of the DOC review process. As a result, the merits of the

retaliation based grievance against Miller were never addressed. Consequently, Corrections Defendants conclude that Plaintiff procedurally defaulted his retaliation claims against Miller.

As was the case with CO Lynn, Plaintiff counters that his claim against CO Miller was exhausted as he filed a grievance which was addressed on the merits and administratively appealed to final review. <u>See</u> Doc. 100, p. 4. Freeman has also submitted a copy of what he contends is a May 20, 2010 final written denial on the merits by Chief Grievance Officer Varner of his grievance against CO Miller. <u>See</u> Doc. 98, p. 6.

Corrections Defendants' reply and motion for sanctions both contend that this alleged denial by Varner is also a forgery for the same reasons set forth in their forgery argument regarding CO Lynn. This Court has carefully reviewed the purported May 20, 2010 response by Varner which was submitted by Freeman. In addition the July 18, 2010 grievance (regarding CO Lynn) response attributed to Varner which was previously determined to be non-authentic, and the response to Grievance # 288554 were examined by this Court.

Based upon a comparison of those three documents and as previously discussed herein, it is apparent that Plaintiff or someone acting on his behalf used Varner's response to grievance # 288554 as a template, replaced the grievance #, date, and response contained therein with new information to created fabricated responses dated May 20, 2010 and July 18, 2010 in an attempt to provide proof that Plaintiff exhausted his administrative remedies in regards to his claims against both CO Lynn and CO Miller. In light of this Court's determination that the May 20, 2010 response relied upon by Plaintiff

is not authentic it will likewise not be taken into consideration.

As previously mentioned, the United States Supreme Court has recognized that prisoners must comply with the grievance system's procedural rules. <u>Woodford</u>, 548 U.S. at 93. Since Freeman neglected to either seek relief or comply with the DOC's procedural rules with respect to his retaliation claims against Miller, entry of summary judgment in favor of said Defendant on the basis of non-exhaustion is appropriate. In addition, the Corrections Defendants' motion for sanctions with respect to the fabricated May 20, 2010 grievance response submitted by Freeman will also be granted, however since the claims against Miller will not proceed, the Court will refrain from imposing any additional sanctions at this time.

## Failure to Protect Claims

With respect to the third surviving claim that multiple Corrections Defendants failed to protect Plaintiff, Freeman states that after he and his RHU cellmate, Inmate Williams, got into two fights with one another they asked Defendants Knorr, Miller, Kaufman, Erdly, Burnhart, Burns, McDonald, Gooler, and Mowry to be separated from one another. Williams also purportedly indicated to some correctional staff that he was going to stab Plaintiff. However, their requests for separation were denied. On September 6, 2009, Sergeant Gooler purportedly warned Williams that he would be issued a misconduct if he assaulted Plaintiff but the officer similarly failed to have the cellmates separated. Correctional Officer Fetterolf also allegedly failed to implement any appropriative protective measures after being informed by Plaintiff that his cellmate had threatened him. Freeman claims that he was subsequently attacked and stabbed by Inmate

Williams.  See id. at p. 3 ¶ 5.  Defendants Hoot, Henz, and McCoy purportedly witnessed

this altercation but refused to open the cell door and simply yelled at Williams to cease his

assault.

Corrections  Defendants' request for summary judgment asserts that while Plaintiff

did file and exhaust a grievance relating to his failure to protect claim, his filing failed to

specifically name or set forth any facts specifically regarding Defendants Miller, Erdly,

Burnheart, Mowrey, Fetterolf, Hoot, Henz, or McCoy.  See Doc. 95, p. 16

In Jones, the United States Supreme Court stated that "exhaustion is not *per se*

inadequate simply because an individual later sued was not named in the grievances."

Jones, 549 U.S. at 219.  Since it is conceded by the Corrections Defendants that the

grievance sought relief against all of the correctional officers who worked the first and

second shift in the RHU on September 6, 2009 and set forth the substance of Plaintiff's

pending failure to protect claim, this Court is satisfied that a finding of non-exhaustion is

not warranted solely based upon the failure of the grievance to list specific names.[4]

Corrections Defendants also correctly note that the sole claim asserted against

Defendants Hoot, Henz, and McCoy relates to their alleged failure to come to Plaintiff's

aid while he was being attacked by his cellmate.  They alternatively argue that those three

defendants are entitled to summary judgment on the bais of non-exhaustion because the

_____

[4] Corrections Defendants also argue that Defendants Miller, Burnheart, and Mowrey were neither named in the grievance nor assigned to work in the RHU on the first or second shift of September 6, 2009 they are entitled to a finding of non-exhaustion.  However, since the substance of the grievance asserts that correctional staff failed to respond to Plaintiff's request to be removed from his cell prior to the September 6, 2009 incident, this argument lacks persuasion.

only exhausted grievance by Freeman "does not make any allegations about any officers failing to come to Plaintiff's aid during the alleged attack."  Doc. 95, p. 17.

A review of the record shows that Plaintiff filed and exhausted an administrative grievance wherein he stated that he was assaulted by his cellmate, Inmate Williams on September 6, 2009.  See Doc. 88-3, p. 26.  the grievance sought relief on the basis that correctional staff knew that freeman's life was in danger prior to the incident but ignored his request to be moved from the cell.  There was no allegations set forth in the grievance that any correctional officers witnessed the altercation as it was occurring but refused to open the cell door and simply yelled at Williams to cease his assault.

Based upon an application of the well settled administrative exhaustion standards since the substance of the claims asserted against Defendants Hoot, Henz, and McCoy was not encompassed within Freeman's grievance those three Defendants are entitled to entry of summary judgment on the basis of non-exhaustion of administrative remedies.

Corrections Defendants also argue that because Plaintiff "was not in any real objective danger, he cannot succeed on his Eighth Amendment claims" of failure to protect.  Doc. 95,  p. 21. They add that because:  (1)  the undisputable medical evidence show that Freeman did not suffer any serious injury, and (2) the facts unequivocally show that the incident was staged, he cannot succeed on a failure to protect claim.

Prison officials violate an inmate's right to be free from cruel and unusual punishment when, through intentional conduct or deliberate indifference, they subject the inmate to violence at the hands of another prisoner.  Young v. Quinlan, 960 F.2d 351, 361 (3d Cir. 1992); Riley v. Jeffes, 777 F.2d 143, 147 (3d Cir. 1985).  Mere negligent conduct

that leads to serious injury of a prisoner by a prisoner does not expose a prison official to liability under § 1983. <u>Davidson v. Cannon</u>, 474 U.S. 344, 347-48 (1986).

The victim's custodian is exposed to civil rights liability only when "he <u>knows</u> <u>or</u> <u>should</u> <u>have</u> <u>known</u> of a sufficiently serious danger to [the] inmate." <u>Young</u>, 960 F.2d at 361; <u>see also</u> <u>Martin v. White</u>, 742 F.2d 469, 474 (8th Cir. 1984); <u>Mosby v. Mabry</u>, 697 F.2d 213, 215 (8th Cir. 1982).

The Third Circuit Court of Appeals has "stress[ed], however, that in constitutional context 'should have known' is a phrase of art with a meaning distinct from its usual meaning in the context of the law of torts." <u>Young</u>, 960 F.2d at 361. As our Court of Appeals explained the phrase, "does not refer to a failure to note a risk that would be perceived with the use of ordinary prudence." <u>Colburn v. Upper Darby Township</u>, 946 F.2d 1017, 1025 (3d Cir. 1991). Instead, "[i]t connotes something more than a negligent failure to appreciate the risk . . ., though something less than subjective appreciation of that risk." <u>Id</u>. Moreover, "the risk of . . . injury must be not only great, but also sufficiently apparent that a lay custodian's failure to appreciate it evidences an absence of any concern for the welfare of his or her charges." <u>Id</u>. Consequently, liability only attaches when there is a "pervasive risk of harm to inmates from other prisoners,[5] . . . and that the prison officials have displayed 'deliberate indifference' to the danger." <u>Riley</u>, 777 F.2d at 147.

Corrections Defendants assert that Plaintiff did not display any detectable injuries

---

5. The Court of Appeals for the Third Circuit has noted that "prison officials should, at a minimum, investigate each allegation of violence or threat of violence." <u>Young</u>, 960 F.2d at 363 n.23.

when examined by a nurse after the alleged attack. They have submitted copies of Plaintiff's relevant institutional medical records to support that contention and note that even though Plaintiff alleged that he was stabbed, he never sought any medical treatment for any stab wound. The summary judgment motion adds that Freeman has a muscular built while his alleged assailant Inmate Williams is slight in stature. Moreover, it is pointed out that Inmate Williams admitted to prison officials that the incident was staged as part of a plan to obtain a single cell.

In opposition to the this argument, Plaintiff has provided the Court with a photograph of a weapon taken by prison officials (Doc. 99, p. 3) from Inmate Williams on the date in question. Also submitted as well as a copy of a misconduct charge filed against Williams by CO Hoot which states that on September 6, 2009 Hoot witnessed Williams striking Freeman with the weapon. See id. at p. 4.

In the present case, Inmate Williams has clearly made conflicting versions as to the events of September 6, 2009. Second, given the fact that Plaintiff was larger, more muscular then Williams is not compelling given the fact that Williams was armed with a sharpened weapon. Moreover, although Williams may not have actually stabbed the Plaintiff does not necessarily compel a conclusion that he posed a known risk to Freeman's safety.

Based upon Plaintiff's submissions, especially noting that it is undisputed that Williams was armed with a weapon and there is no indication that Hoot issued a misconduct which in part charged Williams with assault and thus, at least initially, concluded that the incident was not staged, this Court is satisfied there are material facts in

dispute as to whether the September 6, 2009 incident was staged.[6]  Accordingly the alternative request for entry of summary judgment on the failure to protect claims against Defendants Miller, Erdly, Burnheart, Mowrey, Fetterolf will be denied.

**Conditions of Confinement**

Between February 12-18, 2009, Plaintiff was allegedly placed in a hard cell within the SCI-Coal Twp. RHU which had no desk, seat, clothes, mattress, soap, recreation privileges, legal mail, or toilet paper.  See Doc. 1, ¶ 14.  Due to the cold temperature in the cell, the Complaint states that Freeman caught a cold, suffered from a massive headache, and his feet went "numb" and started burning.[7]  Id.  In addition, Lieutenant Eveland told Plaintiff that he would have to endure those conditions for a one (1) week period and Defendants Eveland, Fetterolf Burnhart, Seedor, Marx, Trautman, Shepperson, Faust, Captain Miller, Officer Miller, McCoy and Erdly denied his requests for relief including a blanket.  Despite those physical problems, Plaintiff was purportedly not permitted to see a doctor until February 14, 2009.

Corrections Defendants' final non-exhaustion argument maintains that the only claims relating to Freeman's conditions of confinement which were administratively exhausted were his allegations relating to  the temperature in his hard cell being too cold and subsequent health consequences.  See Doc. 95, p. 18.  In support they have submitted copy of Grievance 3082000 (Doc. 89-3, p. 57.)  A review of the mostly illegible grievance

---

[6]  It is noted that the outcome of the misconduct charges, especially the assault allegation, filed by Hoot against Williams has not been provided to the Court.

[7]  The Complaint noted that because two toes on Freeman's right foot were previously amputated he has irregular blood circulation.

indicates that in addition to complaining about the cold temperature in his cell, Freeman also asserted that the cell had "no desk, seat, mattress ono clothes, no toilet paper. <u>Id</u>. at A., Lines 1-2. The response to said grievance states that Plaintiff was not provided with a blanket or any other items for security reasons (because he was on constant suicide watch). <u>See</u> <u>id</u>. at p. 59. It also provides that correctional staff denied that Plaintiff's legal materials were taken.

Pursuant to the above discussion, this Court disagrees with the Corrections Defendants' characterization that the grievance only complained about cold temperature and medical consequences. Since Plaintiff's grievance complained of multiple deficiencies this Court is satisfied that Corrections Defendants were adequate given notice by Plaintiff of the substance of his claim of being subjected to unconstitutional conditions of confinement. The request for summary judgment on the basis of failure to exhaust administrative remedies with respect to the conditions of confinement claim will be denied.

In the alternative, Corrections Defendants argue that because Plaintiff "was not in any real objective danger, he cannot succeed on his Eighth Amendment claims." Doc. 95, p. 21. It is noted that this argument only addresses Plaintiff's contentions as to the cold temperature in his hard cell and the alleged resulting medical difficulties caused by the cold.

The Eighth Amendment's prohibition of cruel and unusual punishment imposes duties on prison officials to provide prisoners with the basic necessities of life, such as food, clothing, shelter, sanitation, medical care and personal safety. <u>See</u> <u>Farmer v.</u>

Brennan, 511 U.S. 825, 832 (1994); Helling v. McKinney, 509 U.S. 25, 31 (1993). Prison

conditions may amount to cruel and unusual punishment if they cause "unquestioned and

serious deprivations of basic human needs ... [that] deprive inmates of the minimal

civilized measure of life's necessities." Tillman v. Lebanon County Correctional Facility,

221 F.3d 410 (3d Cir. 2000).

In reviewing conditions of confinement claims, courts have stressed that the

duration of the complainant's exposure to the alleged unconstitutional conditions and the

"totality of the circumstances" are critical to a finding of cruel and inhumane treatment.

Moreover, the focus must be on the deprivation of a particular basic necessity. As

explained in Wilson v. Seiter, 501 U.S. 294, 304-05 (1991):

> Some conditions of confinement may establish an Eighth
> Amendment violation 'in combination' when each would not
> do so alone, but only when they have a mutually enforcing
> effect that produces the deprivation of a single, identifiable
> human need such as food, warmth, or exercise – for example, a
> low cell temperature at night combined with a failure to issue
> blankets. To say that some prison conditions may interact in
> this fashion is a far cry from saying that all prison conditions
> are a seamless web for Eighth Amendment purposes. Nothing
> so amorphous as 'overall conditions' can rise to the level of
> cruel and usual punishment when no specific deprivation of a
> single human need exists.

In addition to showing conditions that pose a risk of serious harm, the inmate must

show that the prison official responsible for the conditions of confinement acted with "a

sufficiently culpable state of mind." Id. at 298. A prison official violates the Eighth

Amendment when he acts with deliberate indifference to a known objectively serious risk

to a prisoner's health or safety. See Farmer, 511 U.S. at 837; Beers-Capitol v. Whetzel,

256 F. 3d 120, 125 (3d Cir. 2001). This requirement of actual knowledge means that "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837.

This Court has concluded that Plaintiff exhausted his administrative remedies as to multiple alleged unconstitutional conditions of confinement during a six (6) day period he spent in a hard cell. Since the pending summary judgment motion does not address the totality of those conditions as required under Wilson the request for summary judgment will be denied.

**John Doe Defendants**

Multiple John and Jane Doe employees at SCI-Cresson including an unidentified Hearing Examiner are also named as Defendants in this matter. John Doe defendants may only be allowed "to stand in for the alleged real parties until discovery permits the intended defendants to be installed." Johnson v. City of Erie, 834 F. Supp. 873, 878 (W.D. Pa. 1993) (citations omitted). Absent compelling reasons, a district court may dismiss such defendants if a plaintiff, after being granted a reasonable period of discovery, fails to identify them. Scheetz v. Morning Call, Inc., 130 F.R.D. 34, 37 (E.D. Pa. 1990) ("Fictitious parties must eventually be dismissed, if discovery yields no identities.").

Based on this Court's review of the record, although this action was filed more then two (2) years ago in 2010, Plaintiff has not yet provided this Court with the identities of any of the John and Jane Doe Defendants. Plaintiff will be granted thirty (30) days from the date of this order in which to properly provide the name of the John and Jane Doe

Defendants. If Freeman fails to timely identify the John and Jane Doe Defendants, dismissal will be entered in their favor under the authority of <u>Scheetz</u>.

**<u>Conclusion</u>**

Pursuant to the above discussion, Corrections Defendants' motion for summary judgment regarding Plaintiff's four remaining claims will be granted in part**.** The Corrections Defendants' motion for sanctions will also be partially granted.

Specifically, summary judgment will be granted in favor of CO Lynn for the failure Plaintiff to exhaust his available administrative remedies with respect to the inappropriate pat down search claim. The retaliation claims against CO Miller and the failure to protect claims against Captain McCoy, CO Hoot, and CO Henz, will likewise be dismissed on the basis of non-exhaustion. The remaining summary judgment arguments will be denied. Accordingly, summary judgment will be entered in favor of CO Lynn, CO Hoot, and Co Henz.[8]

The claim that Defendants Miller, Erdly, Burnheart, Mowrey, Fetterolf failed to protect Plaintiff's safety after being informed that his cellmate posed a risk to Freeman's safety and the conditions of confinement relating to Plaintiff 's six (6) day hard cell placement will be allowed to proceed at this juncture.

Finally, in an effort to bring this matter to timely and final resolution, Plaintiff is directed to provide this Court with the name of the John and Jane Doe Defendants within

---

[8] Since summary judgment is being granted with respect to the claims relating to the motion for sanctions, no further sanctions will be imposed. However, Plaintiff is forewarned that any future attempts to mislead this Court through the use of non-authentic documents will result in dismissal of this action.

thirty (30) days.  Failure of Plaintiff to do so will result in dismissal of the John and Jane

Doe Defendants.  Furthermore, the parties will be granted until May 1, 2013 in which to

conclude discovery and any dispositive motions shall be filed by May 31, 2013.  An

appropriate Order will enter

 

 

BY THE COURT:

**s/James M. Munley**
**JUDGE JAMES M. MUNLEY**
**United States District Court**

**DATED: MARCH 4  , 2013**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JAMES FREEMAN,** | : | |
| | : | |
| **Plaintiff** | : | |
| | : | |
| **v.** | : | **CIVIL NO. 3:10-CV-1545** |
| | : | |
| **J. A. MILLER, et al.,** | : | **(Judge Munley)** |
| | : | |
| **Defendants** | : | |

::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## <u>ORDER</u>

**AND NOW**, to wit, this 4[th]day of March, 2013, for the reasons set forth in the foregoing Memorandum, it is hereby **ORDERED** that:

1.  Corrections Defendants' motion for summary judgment (Doc. 86) is **PARTIALLY GRANTED.**

2.  The Corrections defendants' motion for sanctions (Doc. 104) is **PARTIALLY GRANTED**.

3.  Summary judgment is **GRANTED** in favor of Defendants CO Lynn; the retaliation claims against CO Miller; and the failure to protect claims against Captain McCoy, CO Hoot, and CO Henz, on the basis of non-exhaustion of administrative

25

remedies.

4.   The Clerk of Court is directed to enter summary judgment in favor of CO Lynn, CO Hoot, and Co Henz.

5.   The failure to protect claims against Defendants Miller, Erdly, Burnheart, Mowrey, Fetterolf and the conditions of confinement relating to Plaintiff 's six day hard cell placement will proceed.

6.   Within thirty (30) days from the date of this Order, Plaintiff shall provide this Court with the names of the John and Jane Doe Defendants.

7.   Failure of Plaintiff to provide the names of the John and Jane Doe Defendants will result in dismissal being entered in favor of the John and Jane Doe Defendants.

8.   The parties shall conclude discovery by May 1, 2013.

9.   Any further dispositive motions shall be filed by May 31, 2013.

**BY THE COURT:**

**s/James M. Munley**
**JUDGE JAMES M. MUNLEY**
**United States District Court**