IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JAMES FREEMAN,** | : | |
| Plaintiff | : | |
| v. | : | CIVIL NO. 3:10-CV-1545 |
| **J. A. MILLER, et al.,** | : | (Judge Munley) |
| Defendants | : | |

## MEMORANDUM

### Background

James Freeman ("Plaintiff"), an inmate presently confined at the State Correctional Institution, Frackville, Pennsylvania ("SCI-Frackville") filed this pro se civil rights action pursuant to 42 U.S.C. § 1983.[1]  Twenty-five (25) employees at Plaintiff's former place of incarceration, the State Correctional Institution, Coal Township, Pennsylvania (SCI-Coal Twp) were among the individuals named as Defendants.  As a result of prior decisions rendered by this Court, Freeman's surviving claims are that: (1) SCI-Coal Twp. officials failed to protect Plaintiff's safety with respect to a September 6, 2009 stabbing incident; and (2) Millbrook was subjected to unconstitutional conditions confinement during a six (6) day hard ell placement.

After being granted permission to do so by this Court's March 4, 2013 Order, the Remaining Defendants have filed a second motion for summary judgment. See Doc. 136. The opposed motion is ripe for consideration.

---

[1] Freeman was recently transferred to SCI-Frackville.  See Doc. 165.

1

**Discussion**

**Standard of Review**

Summary judgment is proper if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); See also Saldana v. Kmart Corp., 260 F.3d 228, 231-32 (3d Cir. 2001). A factual dispute is "material" if it might affect the outcome of the suit under the applicable law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A factual dispute is "genuine" only if there is a sufficient evidentiary basis that would allow a reasonable fact-finder to return a verdict for the non-moving party. Id. at 248. The court must resolve all doubts as to the existence of a genuine issue of material fact in favor of the non-moving party. Saldana, 260 F.3d at 232; see also Reeder v. Sybron Transition Corp., 142 F.R.D. 607, 609 (M.D. Pa. 1992). Unsubstantiated arguments made in briefs are not considered evidence of asserted facts. Versarge v. Township of Clinton, 984 F.2d 1359, 1370 (3d Cir. 1993).

Once the moving party has shown that there is an absence of evidence to support the claims of the non-moving party, the non-moving party may not simply sit back and rest on the allegations in its complaint. See Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). Instead, it must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." Id. (internal quotations omitted); see also Saldana, 260 F.3d at 232 (citations omitted). Summary judgment should be granted where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that

party will bear the burden at trial." Celotex, 477 U.S. at 322-23. "'Such affirmative evidence – regardless of whether it is direct or circumstantial – must amount to more than a scintilla, but may amount to less (in the evaluation of the court) than a preponderance.'" Saldana, 260 F.3d at 232 (quoting Williams v. Borough of West Chester, 891 F.2d 458, 460-61 (3d Cir. 1989)).

**Personal Involvement**

Remaining Defendants' initial argument asserts that Defendants Jellen, Shipe, Kauffman, Knarr, Burns, McDonald, and Gooler are entitled to entry of summary judgment as there are no surviving claims raised against those officials. See Doc. 150, p. 9.

The only claim asserted against Mail Room Supervisor Jellen was a mail handling allegation which was dismissed by this Court's September 30, 2011 Memorandum and Order. Plaintiff concurs that Jellen should no longer be listed a defendant. See Doc. 159, p. 3. Accordingly, this unopposed argument will be granted and summary judgment will be entered in favor of Defendant Mail Room Supervisor Jellen.

With respect to Lieutenant Shipe a review of the record confirms that there is no contention that Defendant Shipe had any personal involvement in either of the surviving failure to protect or conditions of confinement claims. Rather, the only allegations against said Defendant were related to the handling of a grievances stemming from the failure to protect Plaintiff's safety claim and the assertion that Correctional Officer Lynn conducted an unconstitutional pat down search. Since summary judgment was previously granted with respect to the improper pat down search contention, there is no remaining basis for liability against Shipe with respect to that allegation.

Second, any attempt to establish liability against Shipe solely based upon the substance

3

or lack of response to either the pat down or failure to protect related grievances does not by itself support a constitutional due process claim. See Alexander v. Gennarini, 144 Fed. Appx. 924, 925 (3d Cir. 2005)(involvement in post-incident grievance process not a basis for § 1983 liability) Summary judgment will also be granted in favor of Defendant Shipe.[2]

Plaintiff alleges that Remaining Defendants Kauffman, Knarr, Burns, McDonald, and Gooler were personally involved in the purported failures to protect his safety. Hence, their request for entry of summary judgment on the basis of lack of personal involvement will be denied.[3]

**Failure to Protect**

Plaintiff claims that multiple Remaining Defendants failed to protect his safety. Specifically, Freeman states that after he and his RHU cellmate, Inmate Williams, got into two fights with one another they made requests to Defendants Knorr, Miller, Kaufman, Erdly, Burnhart, Burns, McDonald, Gooler, and Mowry to be separated from each other. Williams also purportedly indicated that he was going to stab Plaintiff. However, the inmates' respective requests for separation were denied. It is undisputed that Freeman enjoyed a significant size

---

[2] Remaining Defendants also seek entry of summary judgment with respect to Nurse Marx on the basis that said individual is not a party. See Doc. 150, p. 13. A review of the Complaint and docket does not show that an individual named Marx has been named as a defendant in this matter. Thus, this Court agrees that Nurse Marx has not been named as a defendant in this matter.

[3] While this Court's March 4, 2013 Memorandum and Order stated that the failure to protect claims against Defendants Miller Erdly, Burnheart, Mowry and Fetterolf would proceed, said ruling was made in response to a summary judgment request made on behalf of those officials and was not intended to be a disposition of claims against any other Defendants.

4

advantage over Williams.[4]

On September 6, 2009, Sergeant Gooler purportedly warned Williams that he would be issued a misconduct if he assaulted Plaintiff but the officer similarly failed to have the cellmates separated. Correctional Officer Fetterolf also allegedly failed to implement any appropriative protective measures after being informed by Plaintiff that his cellmate had threatened him. Freeman claims that he was subsequently attacked and stabbed by Inmate Williams on September 6, 2009. See Doc. 1, p. 3, ¶ 5. Defendants Hoot, Henz, and McCoy purportedly witnessed this altercation but refused to open the cell door and simply yelled at Williams to cease his assault.

Remaining Defendants' pending request for summary judgment asserts that they "did not disregard a known excessive risk to Plaintiff's health or safety; because the defendants did not infer that a substantial risk of serious harm existed." Doc. 150, p. 29-30. Alternatively, they argue Plaintiff cannot prove that any Remaining Defendant knew that he faced an excessive risk of harm.

Prison officials violate an inmate's right to be free from cruel and unusual punishment when, through intentional conduct or deliberate indifference, they subject the inmate to violence at the hands of another prisoner. Young v. Quinlan, 960 F.2d 351, 361 (3d Cir. 1992); Riley v. Jeffes, 777 F.2d 143, 147 (3d Cir. 1985). Mere negligent conduct that leads to serious injury of a prisoner by a prisoner does not expose a prison official to liability under § 1983. Davidson v. Cannon, 474 U.S. 344, 347-48 (1986). The victim's custodian is exposed to civil rights liability

---

[4] Based on submitted photographs and written descriptions, Plaintiff is tall and muscular while Williams short, slight in stature and weigh approximately 100 pounds less than Freeman.

only when "he <u>knows or should have known</u> of a sufficiently serious danger to [the] inmate." <u>Young</u>, 960 F.2d at 361; see also <u>Martin v. White</u>, 742 F.2d 469, 474 (8th Cir. 1984).

The Third Circuit Court of Appeals has "stress[ed], however, that in constitutional context 'should have known' is a phrase of art with a meaning distinct from its usual meaning in the context of the law of torts." <u>Young</u>, 960 F.2d at 361. As our Court of Appeals explained the phrase, "does not refer to a failure to note a risk that would be perceived with the use of ordinary prudence." <u>Colburn v. Upper Darby Township</u>, 946 F.2d 1017, 1025 (3d Cir. 1991). Instead, "[i]t connotes something more than a negligent failure to appreciate the risk . . ., though something less than subjective appreciation of that risk." <u>Id</u>. Moreover, "the risk of . . . injury must be not only great, but also sufficiently apparent that a lay custodian's failure to appreciate it evidences an absence of any concern for the welfare of his or her charges." <u>Id</u>. Consequently, liability only attaches when there is a "pervasive risk of harm to inmates from other prisoners,[5] . . . and that the prison officials have displayed 'deliberate indifference' to the danger." <u>Riley</u>, 777 F.2d at 147.

With respect to the claims that Defendants Knorr, Miller, Kaufman, Erdly, Burnhart, Burns, McDonald, Gooler, and Mowry ignored requests by Freeman and Williams to be separated from each other. During his deposition testimony, Freeman admitted that he doubted that he ever told any prison staff member that he feared Inmate Williams prior to the September 6, 2009 incident. Rather, Plaintiff stated that only he only would told prison officials that he and

---

5. The Court of Appeals for the Third Circuit has noted that "prison officials should, at a minimum, investigate each allegation of violence or threat of violence." <u>Young</u>, 960 F.2d at 363 n.23.

Williams did not see eye to eye and got into arguments. See Doc. 254, p. 22, l. 3. Plaintiff also gave deposition testimony stating that the two earlier fights that had previously transpired between he and his cellmate really weren't fights per se but rather occasions where he had to restrain Williams. See id. at p. 25, l. 13. Freeman added that he could not recall what he said to correctional staff about Williams, he never truly believed he was in danger, and therefore did not feel compelled to file a pre-incident grievance. Furthermore, it was Williams, who was considerably smaller in size than Freeman, who indicated to correctional staff that he would harm the Plaintiff if one of them was not moved.

Based upon Plaintiff's own deposition testimony, he is unable to demonstrate under Young that he was incarcerated under conditions posing a substantial risk of serious harm. See Beer-Capitol v. Wetzel, 256 F.3d 120, 125 (3d Cir. 2001) (an inmate must surmount the high hurdle of showing that a prison official actually knew or was aware of a substantial risk to prisoner safety and deliberately disregarded the risk). Freeman has conceded that prior to the September 6, 2009 incident he did not fear Williams and did not think that he was in danger of being assaulted by his smaller in stature cellmate. Moreover, Plaintiff also indicates that prison officials were aware of his desire to be provided with a single cell. In light of those admissions by the Plaintiff himself and the size advantage enjoyed by Freeman, there is no competent evidence that prison officials should have recognized that Inmate Williams posed a significant risk of serious harm or that any of the Remaining Defendants knew of and consciously disregarded such risk[6]. The request for summary judgment with respect to this claim will be

---

[6] It is noted that prison officials had no advance knowledge that Williams was in possession of a weapon.

granted. See Farmer, 511 U.S. at 837 ("the official must both be ware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.")

With respect to the second failure to protect allegation that Defendants Hoot, Henz, and McCoy witnessed the assault of Plaintiff by Inmate Williams but refused to open the cell door and simply yelled at Williams to cease his assault, Remaining Defendants note that Plaintiff is tall and muscular while Williams short, slight in stature and weigh approximately 100 pounds less than Freeman. See Doc. 150, p. 33. They add that the undisputed medical evidence shows that Plaintiff did not suffer any physical injury. Remaining Defendants also reference their prior assertion to this Court that the entire incident was staged.[7] See id.

Copies of written reports prepared by the correctional staff who responded to the incident have been submitted for consideration. See Doc. 152. According to those submissions, while conducting a routine head count, Officers Hoot and Henz went to Plaintiff's cell. Upon their arrival, Freeman appeared to be sleeping while Williams approached the cell door holding a shank, stated that he was displeased over the failure to grant his request to be moved to another cell, and then turned and walked towards Freeman. Williams ignored an order to stop and appeared to strike Freeman with the weapon causing the inmate to fall to the floor. Williams then straddled Freeman and verbally threatened his cellmate. Captain McCoy arrived on the scene at this point and talked Williams into giving up his weapon and submitting to handcuffs. A

---

[7] Inmate Williams has provided contradictory versions of the event at issue. In one version, Williams contends that the incident was staged in an effort for the cell mates to be given single cells. See Doc. 152, p. 19. This version is bolstered by the fact that although Freeman was stabbed with a sharpened instrument while purportedly sleeping, he did not suffer any injury.

statement by Freeman similarly states that he had been sleeping and woke up to find himself on the floor with Williams over him and that Williams had stabbed his shirt. Doc. 152, p. 41.

The weapon employed by Williams to attack Freeman was a sharpened eyeglass arm that did not so much as pierce the Plaintiff's shirt.[8] A declaration under penalty of perjury by Health Care Administrator John Steinhart provides that a review of Plaintiff institutional medical records shows that he suffered no marks or injuries following the altercation with Williams with exception of a small questionable bruise. Doc. 153, p. 4 ¶ 8. Remaining Defendants have also submitted photographs taken of Freeman following the incident which do disclose any discernible injury.

The undisputed facts provide no basis which could support a determination that any correctional officer could have taken action to prevent the initial striking of Freeman, whether real or staged, by Williams. This is not a case where no action was taken. Rather, when Williams was seen holding a weapon, additional assistance was immediately requested by the correctional officers on the scene and Williams was given a verbal order to desist. However, it is clear that there is no other action which could have taken to prevent the immediate alleged attack by Williams.

Thereafter, the undisputed facts show that there was no further physical force undertaken by either prisoner and that the entire incident, which lasted only a few minutes, was terminated without any need for force by the officers because Williams was talked into surrendering. Based upon those considerations, the facts show that Remaining Defendants' response to the incident was appropriate and could not support a determination of deliberate indifference. The request for

---

[8] Plaintiff's institutional medical records including photographs of Freeman confirm that he never suffered any stab wound.

9

summary judgment will be granted.

**Conditions of Confinement**

Remaining Defendants' final argument contends that they are entitled to entry of summary judgment because the surviving allegations that Freeman was subjected to unconstitutional conditions of confinement in February 2009 do not set forth a violation of the Eighth Amendment. See Doc. 150, p. 13.

Between February 12-18, 2009, Plaintiff was allegedly placed in a hard cell within the SCI-Coal Twp. RHU where he was without a desk, seat, clothes, showers, mattress, soap, recreation privileges, mail, or toilet paper. See Doc. 1, ¶ 14. Due to the cold temperature in the cell, the Complaint states that Freeman caught a cold, suffered from a massive headache, and his feet went "numb" and started burning.[9] Id. In addition, Lieutenant Eveland told Plaintiff that he would have to endure those conditions for a one (1) week period and Defendants Eveland, Fetterolf Burnhart, Seedor, Marx, Trautman, Shepperson, Faust, Captain Miller, Officer Miller, McCoy and Erdly denied his requests for relief including a blanket. Despite suffering those physical problems, Plaintiff was purportedly not permitted to see a doctor until two days later on February 14, 2009.

Remaining Defendants contend that although Plaintiff's six day confinement "was admittedly restrictive and perhaps unpleasant, the totality of the circumstances does not warrant a finding of cruel and inhumane treatment." Doc. 150, p. 20.

As previously discussed by this Court, prison officials must provide prisoners with the

---

[9] The Complaint noted that because two toes on Freeman's right foot were previously amputated he has irregular blood circulation. Remaining Defendants concur that Freeman has been diagnosed as suffering from neuropathy.

10

basic necessities of life, such as food, clothing, shelter, sanitation, medical care and personal safety. See Farmer v. Brennan, 511 U.S. 825, 832 (1994); Helling v. McKinney, 509 U.S. 25, 31 (1993). It is well settled that prison conditions constitute cruel and unusual punishment if they result in serious deprivations of basic human needs. See Tillman v. Lebanon County Correctional Facility, 221 F.3d 410 (3d Cir. 2000).

The length of the inmate's exposure to the alleged unconstitutional conditions and the totality of the circumstances must be considered when making a determination as to cruel and inhumane treatment. A prisoner must also establish a specific deprivation of a single, identifiable basic necessity. Wilson v. Seiter, 501 U.S. 294, 304-05 (1991). The inmate must also demonstrate that the prison official responsible for the conditions of confinement acted with "a sufficiently culpable state of mind." Id. at 298. A prison official violates the Eighth Amendment when he acts with deliberate indifference to a known objectively serious risk to a prisoner's health or safety. See Farmer, 511 U.S. at 837; Beers-Capitol v. Whetzel, 256 F.3d 120, 125 (3d Cir. 2001). This requirement means that "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837.

In his deposition testimony, Freeman states that following a February 11, 2010 verbal dispute with Sergeant Erdly regarding the confiscation of a photograph[s], he threatened to hang himself. Doc. 154, Exhibit H, at p. 21, line 13. Freeman admits that he employed a bed sheet as part of his threat. See id. at p. 25, line 6. In response, an

unidentified Lieutenant had Plaintiff transferred to a psychiatric observation cell (POC). HSA Steinhart's declaration similarly provides that Plaintiff was placed in a psychiatric observation cell on the evening of February 11, 2010 after placing a sheet around his neck.

Steinhart adds that the following morning Plaintiff was released from the POC and returned to the RHU with a recommendation by his treating psychiatrist, Doctor Jesse, that he be given a suicide smock, blanket, and underwear pending approval of the Security Department. See Doc. 153, Exhibit F, ¶ 14. HSA Steinhart's statements are supported by accompanying copies of institutional medical records. Freeman's deposition testimony agrees that after being cleared to leave the POC, he was placed in an RHU hard cell on February 12, 2010 where everything was taken out of the cell and he was left with nothing but a smock and boxers. Doc. 153 Exhibit H, p. 22-24. Plaintiff notes that he was not given a blueberry/suicide blanket (because none where available) but rather an extra smock.

In Sandin v. Conner, 515 U.S. 472 (1995), the United States Supreme Court held that while under certain circumstances, states may create liberty interests protected by the Due Process Clause,

> these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force . . ., nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.

Id. at 484 (citations omitted). The Court of Appeals for the Third Circuit in Griffin v. Vaughn, 112 F.3d 703 (3d Cir. 1997), addressed an action initiated by a Pennsylvania state inmate who had been held in administrative custody for a prolonged period. The Court applied Sandin and concluded that placement without any type of due process hearing for a period of fifteen (15) months was not an atypical and significant hardship. Furthermore, the inmate's "commitment to

and confinement in administrative custody did not deprive him of a liberty interest and that he was not entitled to procedural due process protection." Id. at 708. It added that prolonged confinement in administrative custody was not cruel and unusual punishment. Id. at 709. Finally, an inmate placed in administrative custody pursuant to a legitimate penological reason could "be required to remain there as long as that need continues." Id.

Plaintiff acknowledges being placed in an hard cell because he had indicated that he was going to kill himself and had fashioned a noose from a bed sheet as part of his threat. This Court is satisfied that in light of those undisputed circumstances, the recommendation for such placement by his treating psychiatrist, Doctor Jesse provided a legitimate need for Plaintiff's temporary stay in a hard cell.

Second, the Court finds that the relatively short period of time spent by Freeman in the hard cell (approximately six days) was not of such magnitude to constitute the atypical and significant hardship contemplated under Hudson, Sandin, and Farmer. Specifically, it has been recognized that the denial of showers for two weeks is not a constitutional violation. See Briggs v. Heidlebaugh, 1997 WL 318081 *3 (E.D. Pa. 1997); DiFilippo v. Vaughn, 1996 WL 355336 at *5 (E.D. Pa. 1996)(Eighth Amendment does not require that prisoners be afforded frequent or comfortable showers); Veteto v. Miller, 829 F. Supp. 1486, 1496 (M.D. Pa. 1992)(deprivation of showers during period of placement in administrative detention found not to be Eighth Amendment violation).

Likewise, the denial of recreation for six days does not amount to cruel and unusual punishment. Knight v. Armontrout, 878 F.2d 1093, 1096 (8th Cir. 1989). The halting of recreation during emergency lock downs "not objectively serious enough to warrant constitutional protection." Bacon v. Minner, 2007 WL 1157138 *2 (3d Cir. April 19, 2007).

The Third Circuit Court of Appeals has also ruled that a loss of commissary privileges is not the type of atypical and significant hardship which implicates a liberty interest under Sandin. See Milton v. Ray, 301 Fed. Appx. 130, 133 (3d Cir. 2008); Wilkins v. Bittenbender, 2007 WL 708993 *2 (3d Cir. 2007).

Furthermore, denying bedding to an inmate for a short period of time does not rise to a constitutional violation. Castro v. Cheney, No. 97-4983, 1998 WL 767467 *6 (E.D. Pa. Nov. 3, 1998); Stephens v. Cottey v. Stanish, 145 F. Appx. 179, 181 (7th Cir. 2005) (three days without a mattress not a constitutional violation). Moreover, given that Plaintiff was regularly treated by the prison's medical staff during that hard cell period; provided with an extra smock in lieu of a blueberry blanket (because none were available)[10] and the fact that the temperature in the housing unit was kept at a consistent 66-72 degrees,[11] there is no viable basis for an Eighth Amendment claim. While in the hard cell, Plaintiff was treated by Doctor Weisner for a cold and foot pain. Freeman also acknowledges that he was given his daily medications while in the hard cell. Finally, Freeman also admits that although his mail was held from him while he was in the hard cell, it was given to him upon his release. Doc. 154, Exhibit H, p. 31, line 14.

In conclusion, the temporary placement of Freeman in a hard cell within the RHU to protect his safety following an acknowledged suicide threat and at the direction of his treating psychiatrist was appropriate. Moreover, the associated restrictions and deprivation of privileges

---

[10] See Doc. 151-11, p. 3.

[11] An undisputed declaration under penalty of perjury by SCI-Coal Twp. Facility Maintenance Manager Gary Shomper states that during the time period Freeman's hard cell placement the temperature was kept between 66-72 degrees. See Doc. 151-9 ¶ 12. Shomper adds that the thirteen inch thick exterior walls prevent cold air from entering the cells. See id. at ¶ 11.

including showering, access to mail, and recreation during that limited six day period do not rise to the level of a viable constitutional claim.

**John/Jane Doe Defendants**

Finally by Memorandum and Order dated Plainiff was granted thirty (30) days in which provide this Court with the names of the John and Jane Doe Defendants.

The Memorandum and order specifically forwarned Freeman that failure to timely provide this Court with the names of the John and Jane Doe Defendants would result in dismissal being entered in favor of the John and Jane Doe Defendants. The relevant time has passed and the John?Jane Doe Defendants have not been identified, accordingly, dismissal will be entered in their favor. See Scheetz v. Morning Call, Inc., 130 F.R.D. 34, 37 (E.D. Pa. 1990) (absent compelling reasons, a district court may dismiss John/Jane Doe defendants if a plaintiff, after being granted a reasonable period of discovery, fails to identify them).

BY THE COURT:

JUDGE JAMES M. MUNLEY
United States District Court

DATED: MARCH 11, 2014

15 